# Richmond.

## A. O. BARTON v. T. N. CAMDEN.

March 17, 1927.

1. MALICIOUS PROSECUTION—*Evidence to Support Both Theory of Plaintiff and Defendant—Verdict of the Jury Conclusive—Case at Bar.*—The instant case was an action of malicious prosecution. Plaintiff claimed that in instituting the prosecution defendant was actuated by two motives, one being to gratify his personal ill will and malice growing out of plaintiff's objection to the handling of liquor by the son of defendant in the shop occupied by plaintiff and defendant's son, and the second to divert suspicion from the defendant's son by prosecuting the plaintiff. Defendant claimed that as a justice of the peace he felt it incumbent upon him to investigate charges and rumors which he heard with reference to liquor being handled in the shop occupied by his son, another boy and the plaintiff; that he sought the advice of counsel and others; and that he acted without malice. There was support in the evidence found in the record for both these theories.

*Held:* That the verdict of the jury for the plaintiff was conclusive on appeal unless the defendant could show harmful error committed during the trial.

2. MALICIOUS PROSECUTION—*Whether Charge in the Warrant Constituted Crime—Case at Bar.*—In the instant case, an action for malicious prosecution, the warrant upon which plaintiff was arrested charged that plaintiff stated to A. C. Barton that liquor was in his shop, stored there by E. C. Purvis. The warrant concluded in the usual form requiring the deputy sheriff to whom it was addressed to apprehend plaintiff and bring him to trial. The case was tried upon the theory that the warrant charged an offense.

*Held:* That while it might be said that the warrant only charged what plaintiff said to Barton, yet, when construed in connection with the fact that it directed the arrest of plaintiff, and section 4675 (12) of the Code, of 1924, defining as a crime the possession of ardent spirits and the fact that it could have been amended to charge the crime so obviously referred to more specifically, the court did not err in trying the case upon the theory that the charge made in the warrant constituted a crime.

3. MALICIOUS PROSECUTION—*Affidavit, Complaint, Indictment or Information not Charging Crime—General Rule.*—If the necessary elements of an action for malicious prosecution are present, the action will

lie, notwithstanding the affidavit, complaint, indictment or information, or warrant did not allege facts constituting the crime charged, or any crime known to the law.

4. MALICIOUS PROSECUTION—*Affidavit, Complaint, Indictment, or Information not Charging Crime—General Rule—Reason of the Rule.*—A void process, procured through malice and without probable cause, is even more reprehensible, if possible, than if it charged a criminal offense. The wrong is not in the charge alone, but more in the object and purpose to be gained, and the intention and motive in procuring the complaint and arrest. The contents of the complaint, when maliciously made and without good cause, are of but little consequence, and can give no protection.

5. MALICIOUS PROSECUTION—*Instructions—Instruction Given Upon a Partial View of the Evidence—Case at Bar.*—In the instant case, an action for malicious prosecution, the court refused to instruct the jury that if they believed that the plaintiff did state to the defendant that there was liquor in plaintiff's shop, stored in there by one Purvis, then the charge contained in the notice of motion against the defendant was true and they should find for the defendant. Under the evidence the plaintiff did not mean by his statement that he was co-operating with Purvis, or committing any crime, but claimed that he was complaining of Purvis and asserting his own innocence.

*Held:* That to have given the instruction in the form offered would have violated the rule that such an instruction would not be given upon a partial view of the evidence.

6. MALICIOUS PROSECUTION—*Probable Cause—Discharge by Justice—Acquittal by Court.*—When a justice of the peace, having no authority to try the case, but merely to examine into the facts in order to determine whether the accused shall be discharged or sent on to the grand jury for indictment, concluded to discharge the prisoner, this discharge is *prima facie* evidence of the want of probable cause. On the contrary, if either a justice of the peace, or a court having jurisdiction, tries a case and the accused is acquitted, then the rule is that the acquittal cannot be shown as evidence of the want of probable cause, but is merely introduced to show that the prosecution has terminated.

. MALICIOUS PROSECUTION—*Probable Cause—Reason for Rule that an Acquittal is not Evidence of Want of Probable Cause.*—The reason for holding that an acquittal is not evidence of the want of probable cause is because the accused may have been acquitted for some technical reason, or because of a reasonable doubt of his guilt. There may nevertheless have been overwhelming reasons to justify his indictment and trial, unquestionable cause or the prosecution, and yet upon trial and full investigation he may have been acquitted. When this is shown, the action for malicious prosecution must fail.

8. MALICIOUS PROSECUTION—*Question at Issue—Guilt or Innocence of Plaintiff—Malice and Probable Cause.*—Upon an action for malicious

prosecution, it should always be emphasized that the jury is not trying the question of the guilt or innocence of the plaintiff, and their attention should be directed to the true issues in such an action, among which are whether or not there was probable cause for the prosecution, and whether or not the defendant was actuated by malice, both of which must be shown affirmatively by the plaintiff before he can lawfully recover damages of the defendant.

9. EVIDENCE—*Prima Facie Evidence—Instructions to Juries.*—The import of the expression *"prima facie* evidence" used in instructions to juries may not always be perfectly clear to them. Some classification of this expression may be helpful to them. They should be made clearly to understand that this is only a presumption, which the other evidence may rebut or contradict; that such a presumption is not conclusive; that it cuts off no defense, interposes no obstacles to a contest of all of the issues of fact, and relieves neither the court nor the jury from the duty to determine all of the questions of fact from the weight of the whole evidence. It is merely a rule of evidence.

10. MALICIOUS PROSECUTION—*Probable Cause—Instructions Defining Probable Cause Held not to Conflict.*—In the instant case, an action for malicious prosecution, an instruction for plaintiff was to the effect that probable cause "means knowledge or information on the part of the defendant, honestly believed by him to be true, of such facts as would justify a reasonably careful and prudent man in believing that the plaintiff was guilty of the crime charged against him by the defendant." An instruction for defendant in defining probable cause stated that it meant such a state of facts as would lead a man of ordinary prudence to believe and entertain an honest and strong suspicion that the plaintiff was guilty of the offense charged in the warrant.

*Held:* That the difference in the language would not justify a reversal on the ground that the instructions were inconsistent.

11. MALICIOUS PROSECUTION—*Advice—Justice of the Peace—Deputy Sheriff and Local Prohibition Officer—Case at Bar.*—In the instant case, an action for malicious prosecution, a justice of the peace was permitted to testify on behalf of the plaintiff that, upon being consulted by the defendant as to the charge, he advised the defendant not to make the complaint. On the other hand, when the defendant was under examination and offered to testify that he also consulted with a deputy sheriff and local prohibition officer, and was advised by him to secure the warrant which was issued, he was not permitted to testify.

*Held:* That the refusal to admit this evidence for defendant was harmful error.

12. MALICIOUS PROSECUTION—*Advice—Justice of the Peace—Deputy Sheriff and Local Prohibition Officer—Case at Bar.*—In the instant case, an action for malicious prosecution, defendant was not allowed to

testify that he had consulted with a deputy sheriff and local pro-
hibition officer and was advised to secure the warrant. On the other
hand, plaintiff was allowed to show that defendant consulted a jus-
tice of the peace who advised him not to make the complaint. Coun-
sel for plaintiff contended that if this was error it was harmless
because the prohibition officer afterwards came upon the stand and
gave the jury substantially the same evidence, but his evidence did
not directly allude to this proposition and there was no reason to
suppose that if he had undertaken to tell the jury what his advice
was it would not have been excluded.

*Held:* That the exclusion of the prohibition officer's testimony as
bearing on the question of malice must have been of great conse-
quence and probably affected the amount of the recovery.

Error to a judgment of the Circuit Court of Buck-
ingham county, in a proceeding by motion for a judg-
ment for damages. Judgment for plaintiff. Defend-
ant assigns error.

*Reversed and remanded.*

The opinion states the case.

*Hubard & Boatwright* and *A. B. Dickinson,* for the
plaintiff in error.

*Claude R. Wood, John D. Easley,* and *S. W. Shelton,*
for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

T. N. Camden, plaintiff in the trial court, has recov-
ered of A. O. Barton, hereinafter sometimes called the
defendant, $1,500 damages, claimed as for a malicious
prosecution.

The evidence presents issues of fact, and the con-
tentions of the parties may be thus summarized: The
plaintiff's claim is, that after he had caught the defend-
ant's son with liquor in his shop (which was rented of

defendant and jointly occupied), and threatened to make complaint unless the practice was stopped, Barton took the matter up with the plaintiff and made it a cause of quarrel, first upon the pretext that the plaintiff had not made certain repairs in that end of the shop occupied by defendant's son and a boy named Purvis, as tenants, and that subsequently the defendant made a charge wholly groundless, against the plaintiff, that he (plaintiff) illegally stored liquor in the shop. The plaintiff relies upon his own evidence, to the effect that Barton, before swearing out the warrant, threatened to "get the plaintiff," or "get even with him," as indicative of defendant's malice; that it was in pursurance of this threat that Barton had a warrant issued and caused the arrest of the plaintiff upon a charge of storing liquor unlawfully. The claim then is that in instituting this prosecution Barton was actuated by two motives, the primary one being to gratify his personal ill will and malice growing out of the plaintiff's own objection to the handling of liquor by Barton's son in the shop, and, secondarily, to divert suspicion from the defendant's son by prosecuting the plaintiff and by having his son summoned as a witness to prove the charge against the plaintiff, to afford his son immunity from prosecution. This may be an extreme statement of the plaintiff's claim, and it is not meant to say that it is fully supported by the evidence.

On the other hand, Barton, the defendant, makes this defense of his part in the transaction: That he, being a justice of the peace, felt it incumbent upon him, in the performance of his public duty, to investigate charges and rumors which he heard with reference to liquor being handled in the shop occupied by his own son, the Purvis boy and the plaintiff, Camden; that actuated by a desire to do his duty, he sought the

advice of counsel and others, and that he acted without malice and without any other improper or ulterior motives.

[1] There is support in the evidence found in the record for both of these theories, which manifestly raises issues of fact upon which the verdict of the jury is conclusive here, unless the defendant, Barton, can show harmful error committed during the trial.

We shall not refer to each of the assignments of error, but only to those which we think necessary to dispose of the case here.

It is claimed that none of the errors are sufficiently assigned, and the rule so recently stated by this court in *Lorillard Co.* v. *Clay*, 127 Va. 746, 104 S. E. 388; *Puckett* v. *Commonwealth*, 134 Va. 574, 113 S. E. 853; *Lamb* v. *Commonwealth*, 141 Va. 489, 126 S. E. 3, and *Lipford* v. *Gates & Sons*, 141 Va. 325, 127 S. E. 183, is relied on. There is much force in this objection, but we think that the assignments to which we shall refer are sufficiently pointed out.

[2] 1. One of the assignments is, that the court erred in trying the case upon the theory that the charge made in the warrant constitutes a crime. That charge, quoting from the warrant of arrest, is "that T. N. Camden, in said county, did, on the 29th day of April, *stated* to A. O. Barton that liquor was in his shop, stored there by E. C. Purvis." The warrant concludes in the usual form, requiring Hughes, the deputy sheriff to whom the warrant was addressed, forthwith to apprehend Camden and bring him to trial.

True it is that construed literally, without any reference to the statute or the surrounding circumstances, it may be said that the warrant only charges what Camden said to Barton. This would, however, be too narrow a construction. Code, section 4675 (12), de-

fines as a crime the possession of ardent spirits at any other place than the permanent *bona fide* home of the possessor. We think it fair to say that while this warrant was clearly defective in form, it could have been amended so as to charge the crime so obviously referred to more specifically. It in fact, however, directed the arrest of Camden, and there could have been no reason for directing such unless the defendant, Barton, who procured the warrant, intended to charge Camden with a crime. The case was tried upon the theory that the warrant did charge an offense, evidence was introduced upon that assumption by both parties, and instructions based thereon were tendered and given.

[3] In 38 Corpus Juris, 389, this is said: "While there is some authority for the rule that no action for malicious prosecution will lie where the affidavit, complaint, indictment or information, or warrant fails to state facts constituting a crime, according to the weight of authority if the necessary elements of an action for malicious prosecution are present, the action will lie, notwithstanding the affidavit, complaint, indictment or information, or warrant did not allege facts constituting the crime charged, or any crime known to the law."

The authorities cited appear to support the statement.

[4] In *Bell* v. *Keepers*, 37 Kan. 64, 66, 14 Pac. 542, 543, this is stated as the reason for the rule: "A void process, procured through malice and without probable cause, is even more reprehensible, if possible, than if it charged a criminal offense. The wrong is not in the charge alone, but more in the object and purpose to be gained, and the intention and motive in procuring the complaint and arrest. The contents of the complaint, when maliciously made and without good

cause, are of but little consequence, and can give no protection.''

The same rule is thus stated in 18 R. C. L. page 20: ''As pointed out by some of the decisions upholding the right to maintain the action, the injury to the accused is the same, whether the warrant is legal or illegal. The defendant is the cause of the prosecution, and since he has done all he could in furtherance of it, the officer's error should not excuse him. If the proceedings are merely irregular or defective, it is generally conceded that the action for malicious prosecution will not be denied, as for instance, where a crime was charged nominally, but the information or affidavit failed to state facts constituting the offense, or was formally insufficient.''

We conclude, therefore, that notwithstanding the form of the warrant, and its manifest defects, these cannot be held to immunize the defendant and defeat this action.

[5] There is another assignment of error, based upon the refusal to give instruction ''H'' for the defendant. This instruction reads:

''The court instructs the jury that if they shall believe from the evidence that the plaintiff did state to the defendant that there was liquor in plaintiff's shop, stored in there by E. C. Purvis, then the charge contained in the notice of motion against the defendant is true and they shall find for the defendant.''

The objection to this instruction is that it is misleading. Of course, it is a good defense to such an action to show that the plaintiff was guilty of the crime charged; but under the evidence in this case, while it is true that the plaintiff did state to the defendant that Purvis had stored liquor in his shop, the plaintiff did not mean by that statement that he was

co-operating with Purvis, or committing any crime, but on the other hand claimed that he was complaining of Purvis and asserting his own innocence. To have given the instruction in the form offered, with a direction to find for the defendant, would have violated the rule that such an instruction should not be given upon a partial view of the evidence, but that all of the pertinent circumstances should be referred to in the instruction.

Another assignment of error raises a question about which a casual reading of the cases in this jurisdiction and elsewhere there may have been some confusion of statement.

In this case, the first instruction for the plaintiff contained the statement that the discharge of the plaintiff on the hearing before the justice is of itself *prima facie* evidence that the warrant was sworn out without probable cause. This is held in *Jones* v. *Finch*, 84 Va. 204, 4 S. E. 342, and many other cases could be cited in support of that rule.

In contrast with that is the line of cases of which *Saunders* v. *Baldwin*, 112 Va. 431, 71 S. E. 620, 34 L. R. A. (N. S.) 958, Ann. Cases 1913B, 1049, is typical. It is said there: "In an action for malicious prosecution, the acquittal of the accused is not evidence of want of probable cause, but such evidence is admissible to show that the prosecution has terminated;" and Buchanan, J., there says: "The general rule is that the acquittal of the accused is not evidence of want of probable cause. Such evidence is admissible merely to show that the prosecution has terminated."

[6] The difference is this: When a justice of the peace, having no authority to try the case, but merely to examine into the facts in order to determine whether the accused shall be discharged or sent on to the grand

jury for indictment, concludes to discharge the prisoner, this discharge is *prima facie* evidence of the want of probable cause. On the contrary, if either a justice of the peace, or a court, having jurisdiction, tries a case and the accused is acquitted, then the rule is that the acquittal cannot be shown as evidence of the want of probable cause, but is merely introduced to show that the prosecution has terminated.

[7, 8] That the general rule supports the instruction here is well sustained by authority. *Lewis* v. *Goldman*, 241 Mass. 577, 136 N. E. 67, 24 A. L. R. 261, *et. seq.* The reason for holding that an acquittal is not evidence of the want of probable cause, is because the accused may have been acquitted for some technical reason, or because of a reasonable doubt of his guilt. There may nevertheless have been overwhelming reasons to justify his indictment and trial, unquestionable cause for the prosecution, and yet upon trial and full investigation he may have been acquitted. When this is shown, the action for malicious prosecution must fail. Upon an action for malicious prosecution, it should always be emphasized that the jury is not trying the question of the guilt or innocence of the plaintiff, and their attention should be directed to the true issues in such an action, among which are whether or not there was probable cause for the prosecution, and whether or not the defendant was actuated by malice, both of which must be shown affirmatively by the plaintiff before he can lawfully recover damages of the defendant.

The instruction complained of was proper in this case.

[9] The import of the expression "*prima facie* evidence," used in instructions to juries, may not always be perfectly clear to them. Some clarification of this expression may be helpful to them. They should be

made clearly to understand that this is only a presumption, which the other evidence may rebut or contradict; that such a presumption is not conclusive; that it cuts off no defense, interposes no obstacle to a contest of all of the issues of fact, and relieves neither the court nor the jury from the duty to determine all of the questions of fact from the weight of the whole evidence. It is merely a rule of evidence and not the determination of a fact. *Meeker* v. *Lehigh Val. R. Co.,* 236 U. S. 430, 35 S. Ct. 328, 59 L. Ed. 657, Ann. Cases 1916B, 691; *Mills* v. *Lehigh Val. R. Co.,* 238 U. S. 481, 35 S. Ct. 888, 59 L. Ed. 1418; *United States* v. *Los Angeles, &c., R. R. Co.,* 47 Sup. Ct. Rep. 413, 71 L. Ed. —, decided February 21, 1927.

Another assignment of error is based upon an alleged contradiction in instruction No. 1, for the plaintiff, and instruction "D," for the defendant, defining probable cause, upon the ground that they are inconsistent.

A comparison of the instructions shows that the inconsistency is quite immaterial. Instruction No. 1 uses the generally accepted language, that probable cause "means knowledge or information on the part of the defendant, honestly believed by him to be true, of such facts as would justify a reasonably careful and prudent man in believing that the plaintiff was guilty of the crime charged against him by the defendant," while instruction "D," in defining probable cause, states that it means "such a state of facts as would lead a man of ordinary prudence to believe and entertain an honest and strong suspicion that the plaintiff was guilty of the offense charged in the warrant."

It is not at all probable that the difference in the language of these two instructions was misunderstood or misconstrued by the jury. Certainly that difference

in the language would not justify a reversal on that ground alone.

[11, 12] There is another assignment which grows out of these facts: A witness, L. P. Gilliam, was permitted to testify on behalf of the plaintiff that, upon being consulted by the defendant as to the charge, he advised the defendant not to make the complaint. On the other hand, when the defendant was under examination and offered to testify that he also consulted with a deputy sheriff and local prohibition officer, and was advised by him to secure the warrant which was issued in this case.

It is difficult to understand why, if the advice of the justice, Gilliam, was admissible against the defendant, the advice of the prohibition officer was not admissible in his favor. It should be observed that in neither case was the evidence offered as conclusive of any issue. It affected the question of malice. The advice of the justice of the peace tended to show, by the defendant's disregard of the advice, that he had some ulterior motive, and this evidence was admitted; whereas, when the defendant undertook to disprove malice by showing that he was advised by the prohibition officer, who was also a deputy sheriff, to have the warrant issued, he was not allowed to do so. Under the peculiar facts of this case, it seems to us that this was harmful error against the defendant. There is nothing improbable about his testimony to the effect that he was driven by his conception of his public duty to take such action, because of the rumors, the charges against his own son, and in view of the statements of the plaintiff to him as to occurrences there. The substantial amount of the verdict clearly indicates, we think, that the jury believed that the plain-

tiff was actuated by actual and active malice.   Under
the facts and contradictions shown in this record, it
was of the highest consequence to the defendant to
disclaim malice and to support it by all the legal
testimony which he could secure.   This he undertook
to do by the testimony referred to.   He should have
been allowed to show that he was advised to the action
by the prohibition officer, and the refusal to admit the
evidence was harmful error.

The significance of this point is fully realized by the
able attorneys for the plaintiff, and they seek to escape
the consequences by alleging that Hughes himself
(the prohibition officer) afterwards came upon the
stand and gave the jury substantially the same evi-
dence, so that the error was thus corrected.   We do
not so construe the evidence of Hughes.   We have no
reason to suppose that if he had undertaken to tell the
jury what his advice was, it would not have been again
objected to and again excluded by the court.   His
evidence does not directly allude to the proposition to
which we are referring.   He says he was consulted
before the warrants were issued· and that he told the
defendant that another justice of the peace would be
by in a few minutes and "we would stop him and get
the warrant;" but there is no word in his testimony
which could have led the jury to think that Hughes
was taking any responsibility or giving any advice
whatever with reference to the arrest of the plaintiff.
A fair construction of Hughes' testimony is that he was
not taking the initiative, but that he was acting in his
official capacity alone and taking no responsibility
whatever as to this particular arrest.   It seems to us
that the exclusion of this testimony as bearing upon
the question of malice must have been of such great

consequence in this case as probably to have affected the amount of the recovery.

This being our view, we must reverse the judgment and remand the case for a new trial.

*Reversed and remanded.*