## WILLIAMS *et al v.* IVEY *et al.*

No. 9390. MAY 12, 1933.

*D. C. Jones* and *B. H. Ramsey,* for plaintiffs in error.

*Hinton Booth,* contra.

BECK, P. J. W. P. Ivey and General Motors Acceptance Corporation brought suit against T. W. Williams, Mrs. T. W. Williams, and Bank of Statesboro. In the petition it is alleged that W. P. Ivey, who was a practicing attorney at law, was employed by T. W. Williams to represent him as associate counsel in a certain suit, on a contingent fee or commission of ten per cent. of the amount recovered in the suit; that Ivey performed the services of his employment, and the suit resulted in the recovery of the sum of $4600, of which Williams received $2300, after paying other attorneys employed in the matter; that Ivey is entitled to the sum of $460 as his fee, which Williams refuses to pay; and that by virtue of being an attorney at law, and having rendered the services, Ivey is entitled to a lien on the fund recovered by Williams as the result of the suit referred to. It is also alleged that General Motors Acceptance Corporation holds an execution against Williams for $517.26; that Williams is insolvent, except for whatever part of the money he received as the result of the suit referred to above; that Williams invested a portion of this money in Postal Savings certificates in the name of his wife, and deposited a part of said money in the Bank of Statesboro in the name of his wife, and in her name invested part of the money in cotton, and another part of the money in a cotton-futures contract with a named firm, and still another part he invested in an automobile; and that all of these alleged investments and transactions were made by Williams in collusion with his wife, to hinder, delay, and defraud his creditors. The petition concludes with a prayer for injunction and for appointment of a receiver.

It was admitted that Williams recovered, as a result of the suit above referred to, the net amount of $2300, and that he is insolvent. The other material allegations of the petition are denied.

A temporary receiver was appointed and an interlocutory injunction granted at the hearing. The defendants excepted.

The debt alleged to be due by Williams to Ivey, was based upon a claim for attorney's fees for services rendered in the suit referred to above. The defendants, among other contentions, insist

that Ivey is not entitled to the fee of $460, which he claims to be due him for services rendered as an attorny at law. This contention of the defendants is based upon the fact that Ivey had not paid his professional tax for the years 1929 and 1930, and Ivey admits that he had not paid his tax for those years. And the question is presented for decision here as to whether an attorney at law is entitled to collect for professional services when he has failed to pay his professional tax for the year in which the services were rendered and the year before. In Park's Code Supp. 1926, § 993(114), the tax imposed is "Upon each and every practitioner of law . . $15.00." Under that section, the license of Ivey as an attorney at law, upon his failure to pay his professional tax for the years 1929 and 1930 was rendered invalid and of no effect, a part of the section reading, "and the validity of their licenses is made contingent upon the payment of the tax herein provided." In the Civil Code of 1910, § 4930, it is declared that "The following persons, if not specially declared ineligible, are entitled to practice law in the courts of this State: (1) Those who have been regularly licensed under laws of the State before the adoption of this Code. (2) Those who are hereafter licensed in the manner prescribed by law." This section seems to make it necessary, to render one entitled to practice law, that he be regularly licensed under the laws of the State; and the annual professional tax of $15 is imposed upon each person holding himself out as a practitioner of law; and in the event of his failure to pay that tax, the license of such practitioner becomes invalid. The law requiring that a practitioner of law shall have a license of course means that he must have a valid license; and if he fails to pay the tax imposed, he no longer has a valid license, though he might at one time have had such a license. The law requiring a practitioner of law to have a license is for the protection of the public. In some jurisdictions it has been held that the failure of a practicing lawyer to pay his professional tax would render him ineligible to practice law and charge for his services; and in others it has been held that it would not disqualify him from practicing law until there has been a fi. fa. issued and a return of nulla bona. And it would seem that, under the provision of our statute quoted above, the failure to pay the tax rendering the lawyer's license invalid, it is not necessary that there should be issued an execution for the tax and a return of nulla bona; that the license becomes invalid ipso

facto. Besides this, we find this language in the Penal Code, § 476: "It shall be unlawful for any person in this State to practice the profession of law, medicine, or dentistry, or any other profession upon which a special tax is levied by the State, and charge for the same, without paying said special tax. If a nulla bona entry has, by proper authority, been entered upon an execution issued by the tax-collector of any county of the State against any person for said special tax, and such person has thereafter engaged in the practice of any or all of said professions and charged for the same, he shall be guilty of a misdemeanor." And the language quoted, making it unlawful for any person in this State to practice the profession of law, "and charge for the same, without paying said special tax," when considered in connection with other statutes quoted in part above, would tend strongly to lead to the conclusion that a lawyer, although he had received his license to practice law, could not render services as a lawyer and charge for the same where he had failed to pay his professional tax. The section of the Penal Code which we have just quoted was taken from an act approved December 22, 1896 (Ga. L. 1896, p. 37), and embodies the substance of sections 1 and 2 of that act. But there is a third section of said act which is embodied in section 1157 of the Civil Code, and that section reads as follows: "Be it further enacted by the authority aforesaid, that if at any time after the passage of this act it shall be found that a nulla bona entry has, by proper authority, been entered upon an execution . . against any person or persons for any special tax, such person or persons shall not then be allowed or entitled to have or collect any fees or charges whatever for their services rendered after the entry of such nulla bona; provided, however, that if at any time after the said entry of nulla bona has been made, the said person or persons whom said execution issues against shall pay said tax in full, with all interest and costs accrued thereon, they shall then (after such payment) be allowed and entitled to collect any fees and charges due them, as though they had never defaulted in the payment of said taxes." This last section must be construed as meaning that it is only after a nulla bona entry has, by proper authority, been entered upon an execution issued by the tax-collector of some county of this State against a person for a special tax, that such person shall not be allowed or entitled to collect any fees or charges for his professional services rendered; and we

must conclude from this language, despite the strong language used in section 1 of the act, making it unlawful to practice the profession of law and charge for the same without paying said special tax, that, until the entry of nulla bona is made upon an execution for the special tax, one licensed to practice law may charge for his services. See also Civil Code, § 4983, relating to the failure of an attorney at law to pay his professional tax, and the duty of the judge presiding in the superior court of the county in which such an attorney resides, to have proceedings brought to have the attorney stricken from the list of attorneys, and to have his license to practice in courts of law in this State declared null and of no effect.

■ ■ The rulings stated in headnotes 2 and 3 require no elaboration. *Judgment affirmed. All the Justices concur.*