# Wytheville

## W. A. Page and Holt Page, Etc. v. C. A. Wilson.

June 10, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Charles W. Crowder,* for the plaintiffs in error.

*Charles E. Maurice,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Under review is a judgment for the plaintiff in an action for malicious prosecution.

Designating the parties as they stood in the trial court, plaintiff in 1924 established himself in business as a retail grocer. His shop was on Hull street in South Richmond, where he catered to a modest clientele. Purchases were at first from the Staples Grocery Company but their prices were not satisfactory. Thereupon he shifted his patronage to the defendants, who were near-by wholesale grocerymen and who did a cash and carry business. Purchases were usually made on Monday, Tuesday and Wednesday of each week and were usually paid for by checks on Fridays which were deposited on Saturdays and which, in due course of business, reached the plaintiff's bank on Mondays, at which time he usually made deposits. This course of dealing continued for some years and until September 15, 1931, when, because collections were not satisfactory, he was told that credit could not be longer extended to him. On that day plaintiff's purchases amounted to $31.93, for which he gave his check for $85.82 to cover that purchase and an unpaid balance of $53.89. This check was returned because there were not to the credit of plaintiff in his bank funds sufficient to meet it. He was duly notified and promised to make it good. On October 2, 1931, he gave an order for merchandise which amounted to $90.46, and on that day he gave another check to cover this purchase, the dishonored check of $85.82, and another overdue item of $6.77, amounting in all to $183.05. This check also was re-

turned dishonored. Its maker was notified; he failed to make it good within five days and in fact has not paid it at all; that is to say, this check of $183.05 covered past due items which amounted to $92.59 and purchases made when it was given and which it purported to cover, in amount $90.46. This particular check was signed in blank by Wilson and was given by him to the defendants on the day of purchase and was by them filled out for the proper amount.

As we have seen, it was never paid and on it a civil warrant issued as of April 4, 1934. It was heard on May 16th. Mr. Wilson was present in court. He said, "We have no defense, we acknowledge it." Judgment went for the amount claimed, although he now tells us that he had paid thereon something like $40.

For a long time he had been on the verge of bankruptcy and did not take out a license in his own name after 1931, when he turned over the business to his son-in-law. In 1933, he had a license taken out in the name of his wife and in that manner business has been conducted since that time, although he continued to make purchases for it, purporting to be for cash; indeed he made a cash purchase on the day of his arrest. In the meantime he gave two other checks to the defendants; one for $124.76 and one for $46. They too were dishonored but were afterwards paid.

W. A. Page consulted W. H. Carrier, Jr., a justice of the peace, and exhibited to him the one hundred and eighty-three dollar check, stated that the transaction was presumed to be upon a cash basis, asked his advice and was advised that a warrant might issue. A warrant did issue and Wilson was arrested on March 16, 1934. He gave bail and his case came on to be heard on April 19th of that year. It was heard upon its merits and he was acquitted. Thereafter this action for malicious prosecution was instituted, resulting, as we have seen, in a judgment for the plaintiff, that judgment being in the sum of $1,000.

The defendants rest their case upon what is commonly known as the "Bad Check Law." That statute, amended from time to time, first appeared in the Session Acts of 1920,

ch. 373, p. 561. It is there provided that any one who obtains property by means of a worthless check shall be deemed guilty of larceny, and that the lack of sufficient funds on deposit to meet such check shall, as against its maker, be *prima facie* evidence of fraudulent intent.

Under this statute came *Turner* v. *Brenner*, 138 Va. 232, 121 S. E. 510. Turner gave a check for flour which was dishonored. He was arrested, prosecuted and acquitted. Thereupon he brought an action against Brenner for malicious prosecution and recovered a judgment for $1,000.

There was evidence tending to show that this check was accepted with the knowledge that it was not good at the time and with an agreement on the part of the payee to hold it until a later date. It was held that this evidence, if believed, was sufficient to overcome the *prima facie* presumption of an attempt to defraud. That case was decided in 1924. It was after this decision and probably with it in mind that this statute was amended (Session Acts, 1928, ch. 507, pp. 1304, 1324) by the insertion of this provision:

"In any civil action growing out of an arrest under this section no evidence of statements or representations as to the status of the check, draft, order, or deposit involved, or of any collateral agreement with reference to the check, draft or order, shall be admissible unless such statements, or representations, or collateral agreement, be written upon the instrument." Section 45, subd. 5.

After this came the amendment of 1930 (Session Acts, ch. 80, p. 89), which changed the offense, which had theretofore been a misdemeanor, to grand larceny where a sum sufficient was involved.

Again in 1934 (Session Acts, ch. 363, p. 732) another amendment was adopted. As amended the statute contains this provision:

"If payment of any check, draft, or order for the payment of money be refused by the bank, banking institution, trust company or other depository upon which such instrument is drawn, and the person who drew or uttered such instrument be arrested or prosecuted under the provisions of this act for

failure or refusal to pay such instrument, the one who arrested or caused such person to be arrested and prosecuted, or either, shall be conclusively deemed to have acted with reasonable or probable cause in any suit for damages that may be brought by the person who drew or uttered such instrument, if the one who arrested or caused such person to be arrested and prosecuted, or either, shall have before doing so presented or caused such instrument to be presented to the depository on which it was drawn where it was refused, and then waited five days after notice, as provided in paragraph three of this section, without the amount due under the provisions of such instrument being paid."

By these successive amendments the Legislature has made plain its purpose. The giving of bad checks for what purports to be cash purchases is discouraged. Loopholes of escape are constantly being closed.

Since the offense charged was committed in 1931, we look of course to the statute then in effect; that is to say, to the statute of 1930 (Acts of 1930, ch. 80). Its pertinent provisions are:

"1. Be it enacted by the general assembly of Virginia, That any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, draft or order, although no express representation is made in reference thereto, shall be deemed guilty of larceny.

"2. Any person who, under the provisions of this act, would be guilty of grand larceny shall, in the discretion of the jury or the court trying the case without a jury, be confined in the penitentiary not less than one year nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

"3. In any prosecution under this act, the making or draw-

ing or uttering or delivery of a check, draft, or order, payment of which is refused by the drawee because of lack of funds or credit, shall be *prima facie* evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, unless such maker or drawer shall have paid the drawee thereof the amount due thereon, together with interest and protest fees, within five days after receiving notice that such check, draft, or order has not been paid to the drawee."

In the instant case the court told the jury that the plaintiff must allege and prove:

"(1) That the prosecution was set on foot by the now defendants and that it has terminated in a manner favorable to the now plaintiff; and

"(2) That it was instituted, or procured, by the cooperation of the now defendants; and

"(3) That it was without probable cause; and

"(4) That it was malicious."

That these first two prerequisites appear is not questioned. No ill will has been proven and no malice has been shown unless malice is to be inferred from want of probable cause. Moreover, where a probable cause did in fact exist, motive is immaterial. *Dickerman* v. *Northern Trust Co.*, 176 U. S. 181, 190, 20 S. Ct. 311, 44 L. Ed. 423; 1 R. C. L. p. 320. Nor is it necessary that the action should have terminated in a manner favorable to the plaintiff. Guilt may be shown in a civil action notwithstanding an acquittal. Nor does the fact that he is in truth innocent and has been acquitted entitled him as a matter of right to recover. He may have been so enmeshed in the web of circumstances as to make his guilt appear probable to any man of ordinary intelligence who is fair minded and reasonable, though he be in fact innocent and though that innocence be afterwards conclusively established. It is a case of *damnum absque injuria*. In such circumstances he is simply out of luck.

"The reason for holding that an acquittal is not evidence of the want of probable cause, is because the accused may have been acquitted for some technical reason, or be-

cause of a reasonable doubt of his guilt. There may nevertheless have been overwhelming reasons to justify his indictment and trial, unquestionable cause for the prosecution, and yet upon trial and full investigation he may have been acquitted. When this is shown, the action for malicious prosecution must fail. Upon an action for malicious prosecution, it should always be emphasized that the jury is not trying the question of the guilt or innocence of the plaintiff, and their attention should be directed to the true issues in such an action, among which are whether or not there was probable cause for the prosecution, and whether or not the defendant was actuated by malice, both of which must be shown affirmatively by the plaintiff before he can lawfully recover damages of the defendant." *Barton* v. *Camden*, 147 Va. 263, 137 S. E. 465, 467.

What is probable cause? There are many definitions. In Burks' Pleading & Practice (3d Ed.) section 151, it is said:

"No accurate definition can be given of probable cause, but 'belief in the charge, on the facts, based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence' will suffice." See also, elaborate note in 26 Am. St. Rep. 127.

Intent is to be gathered from facts proven. No court would listen to a disclaimer by one who knowingly administered deadly poison to another. We have seen that the dealings of these parties began on a cash basis, which was the reason that enabled the defendants to undersell their competitors, but to that plan the plaintiff did not strictly adhere, and so on September 15, 1931, he was told that no further form of credit could be extended to him, and it was after this and on October 2, 1931, that he gave the check which is now in judgment and which was given for his then purchase amounting to $90.46. How can it be said that this did not purport to be a purchase for cash?

Not only does probable cause appear, but the *prima facie* presumption is made absolute. And this is not affected by the fact that Wilson continued to buy for cash from the defendants and on two occasions again gave them checks which were dishonored though afterwards paid.

It is perfectly true that the defendants waited a long time before prosecution was instituted, doubtless in the hope that they might some day get their money. Upon the happening of that contingency it is also doubtless true that no prosecution would have been instituted at all.

The offense, if it be an offense, was committed in 1931, and nothing that the defendants did after the five-day period had passed could affect the applicability of a criminal statute. If Wilson gave this check with intent to defraud he is guilty, and time cannot wipe away his guilt.

If one can give a check in payment of a purchase, knowing that he has no money in bank to meet it and with no present prospect of having any there, although there be in the back of his mind an intention to pay at some more convenient day, and thereby escape that penalty which the law imposes, the statute is wiped away. If it is to be wiped away, it should be wiped away by the Legislature and not by the courts; and, as we have seen, the Legislature manifests no such purpose.

The judgment appealed from should be reversed and final judgment entered for the defendants. It is so ordered.

*Reversed.*