# Richmond

RICHARD C. HORNE, JR. v. BUFORD M. BRIDWELL, ET. AL.

January 21, 1952.

Record No. 3822.

Present, All the Justices.

The opinion states the case.

*Denny, Valentine & Davenport* and *Howard C. Vick,* for the plaintiff in error.

*John S. Barbour, Christopher B. Garnett* and *James Keith,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff in error, Horne, plaintiff below, was indicted by a grand jury of Fairfax county on May 17, 1948, for illegally practicing law before the circuit court of that county. On motion of Horne this indictment was quashed and dismissed. The Commonwealth's attorney said this was done on the ground that the statute of limitations had run and also for duplicity in the indictment. Horne then brought this action against Bridwell and

Pickett, defendants in error, alleging that they procured the indictment maliciously and without probable cause. There was a verdict for the plaintiff for $10,000, which the trial court set aside for the reason, as stated in its written opinion, that the plaintiff was guilty of the offense for which he had been indicted. The plaintiff assigns error to that ruling, while the defendants assign cross-error to the holdings that the issues of probable cause and advice of counsel were jury questions under the evidence.

The occasion of the alleged illegal practice of law by the plaintiff was in connection with a chancery suit which had been instituted by the treasurer of The Falls Church to surcharge and falsify the accounts of Bridwell as executor of the will of a Mrs. Russell, in which the church had been named as residuary legatee. When the church learned of the legacy it appointed Horne, then its senior warden, a "committee of one" to "keep an eye" on the administration of the estate. Later, on the recommendation of Horne, counsel were appointed to represent the church. They were Robert M. Gray, a practicing attorney in Washington, D. C., and formerly a member of the Bar of this State, and James H. Simmonds, a practicing attorney in Arlington in this State. That suit resulted in some additional items of comparatively small amount being charged to the executor, but in a finding that the executor had not been guilty of any misconduct, fraud or bad faith.

Two days after the suit to surcharge and falsify was instituted, Bridwell, through the defendant Pickett as his attorney, brought an action against the church, its rector, treasurer, vestrymen and Horne for damages for slander and libel growing out of the charges against Bridwell. Demurrers were filed to that action which were argued on February 28, 1947, Horne arguing his own and Gray and Simmonds for the other defendants. The demurrers were sustained and that action was dismissed.

On May 14, 1947, the suit to surcharge and falsify came up for hearing on its merits. The hearing was *ore tenus* before Judge Burnett Miller, from another circuit, who had been designated to hear the case. The complainant in that suit had previously asked Gray, one of his attorneys, to let Horne handle the case as Horne had made most of the investigation and done most of the work. That was agreed and Horne, who was not a

party to that suit, examined witnesses, participated in preparing and filing a brief and signed the decree.

On the morning of May 14, Simmonds, the resident attorney, asked the court to excuse him, which was done, and he did not further participate in the case. He said that was because the situation had become embarrassing to him due to Horne's attitude toward Bridwell, to the point of charging him with misappropriation of funds, and he, Simmonds, did not want to be present when Horne examined the witnesses. He did not formally introduce Horne to the court as a foreign attorney, but he said he was confident the judge knew it, either from the proceedings of February 28 or his telling him that morning; and that the judge consented to Horne and Gray handling the proceedings on that day. Judge Miller was unable to recall what had occurred.

The matters, of who may practice law in this State, how those practicing shall qualify before the court, and the penalty for practicing without authority are regulated by statutes. The statutes in effect in 1947, when the offense was alleged to have been committed, were what are now sections 54-42, 54-43 and 54-44 of the Code of 1950.*

■ It is not questioned that the plaintiff practiced law in this State in connection with the chancery suit to surcharge and falsify Bridwell's accounts as executor. He then lived in Falls Church, in Virginia, where he had been a voter since 1938. He was not licensed to practice law under the laws of this State. He had no right to act as attorney in the chancery suit unless he was

---

* § 54-42. Who may practice law.—The following persons may practice law in this State:

All persons, male and female, who have heretofore obtained, or may hereafter obtain, a license to so practice under the laws of this State, and whose license has not been revoked, and who have paid the license tax prescribed by law.

Any person duly authorized and practicing as counsel or attorney at law in any state or territory of the United States, or in the District of Columbia, may for the purpose of attending to any case he may occasionally have in association with a practicing lawyer of this State practice in the courts of this State, in which case no fee shall be chargeable against such nonresident attorney.

§ 54-43. Attorney to qualify in each court in which he practices; oath.— Every such person shall produce, before each court in which he intends to practice, satisfactory evidence of his being so licensed or authorized, and take an oath that he will honestly demean himself in the practice of law, and to the best of his ability execute his office of attorney at law; and also, when he is licensed in this State, take the oath of fidelity to the Commonwealth.

§ 54-44. Penalty for practicing without authority.—If any person shall practice law without being duly authorized or licensed, he shall be guilty of a misdemeanor.

"duly authorized and practicing as counsel or attorney at law" in one of the other States or in the District of Columbia. § 54-42. If he was "duly authorized and practicing" in another State or in the District, it was his duty, before practicing in the Circuit Court of Fairfax county, to produce to that court satisfactory evidence of his being "so * * * authorized" and to take an oath that he would "honestly demean himself in the practice of law, and to the best of his ability execute his office of attorney at law." § 54-43. These were conditions precedent to his exercise of the privilege and courtesy accorded him by Virginia law. Those conditions were not matters of empty form. They were of the spirit of the rules adopted to guide the Virginia lawyer in his relation to his client, as thus expressed:

"The gravity of the consequences to society resulting from abuses of this relation demands that those assuming to advise or to represent others shall be properly trained and educated, and be subject to a peculiar discipline. That fact, and the necessity for protection of society in its affairs and in the ordered proceedings of its tribunals, have developed the principles which serve to define the practice of law." (Rules for Integration of the Virginia State Bar, 174 Va. xviii).

If the plaintiff did not observe those conditions, he violated the law. Admittedly he did not take the required oath and there is no evidence that he produced any evidence of being so authorized. His evidence is only to the effect that Judge Miller knew he was a foreign attorney and consented to his handling the proceedings.

In a long and sarcastic letter written by the plaintiff some months later to the secretary of the Virginia State Bar, unresponsive to the simple inquiry of that official as to whether he was a member of some other Bar, he said: "True, there was no formal introduction to the Court then, but that was hardly necessary as we had both met the Judge on Feb. 28th." It was the duty of the plaintiff to comply with the law, and the failure of the judge to inquire whether he had done so did not relieve the plaintiff of that duty.

The main issue here is whether his demonstrated violation of the law was a misdemeanor under section 54-44, providing that "If any person shall practice law without being duly authorized or licensed, he shall be guilty of a misdemeanor." The trial court held that the present statute "obviously sought to make

any omission punishable under the statute. Certainly the plaintiff is guilty of not only one omission, but the omission of all of the formalities and requirements of the law."

The plaintiff insists that the penalty section, 54-44, does not have so broad an application, but that in terms it makes guilty of a misdemeanor only a person who "shall practice law without being duly authorized or licensed." He argues that his only omission was the taking of the oath and that section 54-44 does not make either that omission, or the omission of the other requirements of section 54-43, a crime. In support he sets forth in his brief the history of these statutes.

Sections 54-42, 54-43 and 54-44 of the 1950 Code correspond to sections 3192-3-4 of the Code of 1887. Section 3194 of the 1887 Code was as follows: "Sec. 3194. Penalty for practicing without being licensed and qualified; when penalty not incurred.—If any person shall practice law in any court of this state, without being so licensed or authorized, or without taking the oaths required, he shall forfeit one hundred and fifty dollars for each case in which he shall appear as attorney, one-half whereof shall be to the informer; * * *."

That section became section 3422 in the Code of 1919, changed only to insert "for compensation" and to omit "any court of" after the word "law" in the first line of the statute. Before that section became effective it was amended by Acts 1918, page 221, but only to change the penalty to a fine of not less than ten nor more than fifty dollars and omitting compensation to the informer. By Acts 1922, page 657, section 3422 was again amended, but only to increase the amount of the fine.

Through the various changes up to 1938 the penalty provided was for practicing law "without being so licensed or authorized, or without taking the oaths required." By Acts 1938, page 772, section 3422 was again amended, changing it to the language that now appears as section 54-44. That amendment changed the title of the statute from "Penalty for practicing without being licensed and qualified," to "Penalty for practicing without being authorized or licensed;" changed the phrase "without being so licensed or authorized" to "without being duly authorized or licensed" and omitted entirely the phrase "or without taking the oaths required."

Defendants argue that the real purpose of these amendments was not to restrict but to extend the coverage of this penalty

section and make it apply to all persons practicing law, whether in or out of court, without being duly authorized or licensed; that the oath provision of the penalty section was omitted because not applicable to persons practicing out of court; that no person was authorized to practice in court without qualifying as required by section 54-43, and hence the penalty for practicing without being duly authorized necessarily applied to one who practiced without having qualified. The trial court so construed the statute.

The argument is plausible but we think the amendments and changes in phraseology indicated a different purpose and require a different construction. The fundamental concern of the statutes since their origin has been that only persons who are qualified in fact shall practice law in this State. The procedure required by section 54-43 is for the purpose of establishing that a person coming into a court to practice possesses the qualifications prescribed by section 54-42. The qualification in court prescribed by section 54-43 is secondary to the qualifications in fact required by section 54-42. The procedure of 54-43 is the form required to establish the fact. The burden is on him who would practice to come prepared with evidence to establish the fact to the satisfaction of the court. The amendments referred to indicate to us a legislative purpose to let the court in which the practicing is done determine whether it is satisfied by the evidence produced that the applicant possesses the qualifications prescribed by section 54-42. The taking of the oath follows upon the production of such evidence, and while still required of all persons who would practice in a court, and failure to obey is a violation of the statute which may be redressed by the court under its general powers, its omission is no longer made a crime by the penalty section 54-44. *Somers* v. *Commonwealth*, 97 Va. 759, 33 S. E. 381.

Section 54-44 makes it a crime for any person to practice without being duly authorized or licensed. Counsel agree that the word "duly" is used in the sense of "according to law." The law prescribing the qualifications of a foreign attorney authorized to practice in this State is found in section 54-42. He must be one "duly authorized and practicing" in another State or in the District of Columbia. One who practices here without being duly authorized to practice in another State or in the Dis-

trict, and actually practicing there at the time he practices here, is guilty of a misdemeanor under section 54-44.

In an effort to establish his right to exercise the privilege granted him, the plaintiff introduced a certificate dated July 11, 1927, from the judge of the Superior Court of Chatham county, Georgia, showing the admission of the plaintiff at the June term, 1927, of that court to practice law in Georgia, together with a certificate of the clerk of the District Court of the United States for the northern district of Georgia showing his admission to practice in that court at the October, 1931, term.

Neither of these certificates is sufficient to show that the plaintiff was duly authorized to practice and was practicing in the State of Georgia at the time he practiced before the Circuit Court of Fairfax county in 1947. The evidence shows he was not then practicing in Georgia. He testified that he left Georgia the last of 1932 or the first of 1933, went to Washington and then moved to Falls Church, Fairfax county, in 1936, and registered as a voter there in 1938 and has since voted in the elections there. He last practiced, he said, in the State courts of Georgia in 1932. That was the last time he had paid his professional tax to that State. He was not authorized to practice in Georgia without paying that tax. Ga. Code Ann., 1935, § 84-9901, § 92-1909. *Williams* v. *Ivey*, 177 Ga. 77, 169 S. E. 366. Hence, at the time he practiced in Virginia, he was neither authorized to practice nor practicing in Georgia.

He also offered and the court rejected a certificate from the Supreme Court of Georgia stating that plaintiff was admitted to the Bar of that court on July 14, 1927, and that ''so far as the official records of this office show, he was a member of that bar in good standing during 1947.'' Those records would, of course, show nothing as to the plaintiff's having moved away from Georgia and not practicing there or paying any license tax there since 1932.

He also offered and the court rejected a certificate by the secretary of the Federal Communications Commission dated June 28, 1949, stating that as of that day the plaintiff was an attorney in good standing before the Commission, and had been admitted to practice before it on May 6, 1936. There was evidence that there were many lawyers practicing in the District who had not qualified before the courts of that District. There was no assignment of error to the rejection of this certificate,

but plaintiff argues that it was admissible because only attorneys at law are admitted to practice before that Commission, citing Federal Register Vol. IV, p. 3343, § 1.33; Code of Federal Regulation, Title 47, § 1.22, and Cum. Supp. p. 11491, § 1.33.

Section 1.33 referred to provides that attorneys at law admitted to practice before any court of the United States, the District of Columbia, or the highest court of any State or territory may be admitted to practice before the Commission.

The fact that the plaintiff was admitted to practice before a Federal Commission under regulations according that privilege to attorneys at law who had previously been admitted to practice in Federal or State courts, was not admissible to prove that he was authorized to practice and was practicing before those courts when he practiced in this State in May, 1947. His 1927 Georgia certificate may have been sufficient before the Federal Commission, but it did not satisfy the requirements of section 54-42.

The evidence produced by the plaintiff, including that which was offered and rejected, was not sufficient to establish that he was duly authorized to practice before the Circuit Court of Fairfax county when he did so, and it follows that he was guilty of the offense charged in the indictment which he says the defendants falsely and maliciously procured against him.

It is well settled that one who was in fact guilty of the offense charged against him cannot maintain an action for malicious prosecution. The basis of the action is injury to an innocent person. Proof of the actual guilt of the person accused is a complete defense even though the prosecution may have been dismissed or the defendant acquitted. The action for malicious prosecution does not lie in favor of a guilty person. *Barton* v. *Camden*, 147 Va. 263, 137 S. E. 465; *Page* v. *Wilson*, 168 Va. 447, 191 S. E. 678; Burks Pl. & Pr., 3d ed., § 150, p. 251, 54 C. J. S., Malicious Prosecution, § 74, p. 1039.

This conclusion makes it unnecessary to consider the defendants' cross-assignments that the evidence shows as a matter of law that there was probable cause for the prosecution, and that they proceeded on advice of counsel.

The judgment below is

*Affirmed.*