# Richmond

E. C. COOK v. COMMONWEALTH OF VIRGINIA.

October 13, 1941.

Record No. 2478.

Present, All the Justices.

The opinion states the case.

*R. S. Wright, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Assistant Attorney-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

E. C. Cook was tried under section 4149(44) of Virginia Code (Michie 1936) on an indictment charging larceny by means of drawing and uttering, with fraudulent intent, a worthless check. The accused, having waived trial by jury, was found guilty and sentenced by the court to imprisonment in jail for the term of six months and to pay a fine of $25.00. From the judgment imposing this sentence the petitioner obtained a writ of error.

The evidence discloses that on May 13, 1940, the accused purchased some chickens from the Rockingham Milling Company, giving in payment therefor a check signed by himself dated May 13, 1940, and drawn on The First National Bank of Strasburg, Virginia, in the amount of $588.80. Mrs. E. C. Cook, wife of the accused, filled in the date, amount, and payee of the check. The evidence conflicts as to whether Cook signed the check immediately upon the consummation of his purchase, or whether he had signed a blank check prior to the date of this transaction to be completed by his wife on this occasion. At any rate his signature is properly on the check, and he used the same to purchase $588.80 worth of chickens which he has now sold.

The check was duly presented for payment at the drawee bank on the 20th of May, 1940, and payment was refused because of "not sufficient funds". On May 21, 1940, the check was returned unpaid. Thereupon, Mr. Bowers, the branch manager for the Rockingham Milling Company, immediately notified the accused that the check had been dishonored. The accused promised to look into the matter at once, and said he expected to pay a good amount on the check. He admitted that he knew there were not sufficient funds in the bank to pay the check at the time he gave it. Despite several other requests made by Mr. Bowers, no payments were tendered for approximately seven weeks.

About a week prior to July 18, 1940, the accused offered to make, and Mr. Bowers agreed to accept, weekly payments on the check. Thereafter, Cook sent $2.00 approximately every week to Bowers until an aggregate of $22.00 had been paid. In November, 1940, these small payments stopped altogether. Bowers then formally in writing notified the accused of the check's dishonor; the check remained unpaid, and an indictment was returned against Cook in February, 1941.

The so-called "Bad Check" statute, upon which this prosecution is based had its inception in the 1920 session of the General Assembly (Acts of 1920, ch. 373, p. 561). It is there provided that any one who obtains property by means of a worthless check shall be deemed guilty of larceny, and that the lack of sufficient funds on deposit to meet such check shall, as against its maker, be *prima facie* evidence of fraudulent intent, unless the amount be paid within a specified period after notice is given.

In 1926 (Acts ch. 292, p. 509) an act was passed which made the offense a misdemeanor and provided for the same *prima facie* presumption of fraudulent intent.

Both prior acts were repealed in 1928, and two new statutes enacted. Chapter 401 of the Acts of 1926, p. 1026, approved March 23, 1928, in subdivision (1) defines the crime, making it larceny for any person, who, with

intent to defraud, draws or utters a check or draft upon a bank or depository, knowing at the time that he has not sufficient funds in such bank for the payment of such check. Subdivison (3) of this chapter provides that the fact of dishonor of a check on a drawee bank because of insufficient funds creates a *prima facie* presumption of intent to defraud and of knowledge of insufficient funds in said bank unless such drawer shall have paid the drawee thereof the amount due within five days after receiving notice that such check had not been paid to the drawee.

At the same session, on March 27, (Acts 1928, ch. 507, p. 1323) section 45 of the Virginia banking act was approved. This section defines the same crime as did chapter 401, providing for the presumption of fraudulent intent, but designates the crime as a misdemeanor.

Again in 1930 (Acts ch. 80, p. 89) the preceding ''Bad Check'' statutes were repealed, the new act making the offense larceny and changing the penalty in accordance therewith.

Finally, in 1934 (Acts ch. 363, p. 731) the enactment of 1930 was amended, and it is our present statute, carried into Michie's 1936 Code as section 4149(44). There were several immaterial changes made in the 1934 act.

The genesis and evolution of the ''Bad Check'' statute is herein set out for the purpose of illustrating that in spite of frequent raising and lowering of the degree of crime dealt with, the acts have all been not only uniform but also practically identical in first defining the crime to be that of drawing or uttering a worthless check with fraudulent intent, and then subsequently prescribing a rule of evidence incident to the prosecution of any person charged with the commission of the crime as previously defined.

The applicable part of the present act, Code, section 4149(44), is as follows:

''First. Any person who, with intent to defraud, shall * * * draw * * * any check * * * upon any bank * * *,

knowing, at the time of such making, drawing * * * , that the maker or drawer has not sufficient funds in, or credit with, such bank * * * , for the payment of such check * * * , although no express representation is made in reference thereto, shall be guilty of larceny.

"Second. Any person who, under the provisions of this act, would be guilty of grand larceny shall, in the discretion of the jury or court trying the case without a jury, be confined in the penitentiary not less than one year nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

"Third. In any prosecution under this section, the making or drawing * * * of a check * * * , payment of which is refused by the drawee because of lack of funds or credit, shall be *prima facie* evidence of intent to defraud and of knowledge of insufficient funds in, or credit with such bank * * * unless such maker or drawer, or some one for him, shall have paid the holder thereof, the amount due thereon, together with interest, and protest fees (if any), within five days after receiving written notice that such check, draft, or order has not been paid to the holder thereof."

The gravamen of the offense denounced by the statute is the intent to defraud. It is an indispensable element of the crime.

The accused alleges as the first assignment of error the overruling of the demurrer to and motion to quash the indictment in the lower court. The attack on the indictment is based on its failure to contain an allegation as to the five days' notice in writing which petitioner claims is required by the statute. The petitioner takes the position that since the Commonwealth relied on the presumption of fraudulent intent arising from failure to pay the amount due after notice was given, then the giving of such notice was one of the elements of the crime charged, and therefore the indictment is defective in not alleging notice. In this argument we find no merit.

The so-called "Bad Check" statutes vary widely in our several jurisdictions. In some of these statutes the crime defined consists of uttering a worthless check and failing to make payment after notice within a specified time. See 22 *Am. Jur.* 480. Clearly under such a statute the giving of notice and failure to make payment are ingredients of the crime. *State* v. *Crockett,* 137 Tenn. 679, 195 S. W. 583. But the Virginia statute (Code, section 4149(44)) makes it a crime to utter a worthless check with fraudulent intent. The crime, under such a statute as ours, is committed, if at all, when the drawer utters the check. *Merkel* v. *State,* 167 Wis. 512, 167 N. W. 802.

The first subdivision of the Virginia statute sets out completely the elements of the crime. The third subdivision defines a mere rule of evidence upon which the Commonwealth may rely in facilitating proof of the fraudulent intent of the drawer. Under this subdivision, if the holder gives written notice of dishonor to the drawer, and payment is not made within five days therefrom, a presumption arises that the drawer uttered the check with fraudulent intent; but this presumption may be rebutted. On the other hand, the Commonwealth may prosecute the drawer for commission of this crime even though no notice of dishonor was ever given. In such event the Commonwealth would be required to prove affirmatively the existence of a fraudulent intent in the mind of the drawer.

Likewise, prosecution under this section might be carried on even if the drawer had made payment within the specified period. Payment would constitute no bar to prosecution; it would merely negative the presumption of fraudulent intent which would otherwise obtain. Consequently, it is clear that the third subdivision, dealing only with a rule of evidence, is not an element of the crime and need not be charged in the indictment.

The accused contends that the agreement of Bowers to accept weekly payments on the check and the

crediting of payments made in pursuance thereof consti-
tuted payment within the contemplation of the statute;
and since this agreement was made prior to the giving
of written notice of dishonor, it vitiated the *prima facie*
presumption of fraudulent intent upon which the Com-
monwealth rested its case. With this ingenious argument
we cannot agree. The statute in plain and unambiguous
terms creates the presumption of intent to defraud
" * * * unless such * * * drawer, or some one for him,
shall have paid the holder thereof, the amount due
thereon, together with interest * * * within five days
after receiving written notice that such check * * * has
not been paid to the holder thereof." Clearly, payments
totaling $22.00 on a check drawn in the amount of $588.80
is not payment of "the amount due thereon" within the
meaning of the statute. On the contrary the "Bad
Check" statute is specifically aimed to discourage the
giving of bad checks for what purports to be a cash pur-
chase when the drawer has, instead of the present means,
only a vague intention to make the check good some time
in the future.

Mr. Justice Holt has this to say in *Page* v. *Wilson,*
168 Va. 447, 455, 191 S. E. 678:

"If one can give a check in payment of a purchase,
knowing that he has no money in the bank to meet it and
with no present prospect of having any there, although
there be in the back of his mind an intention to pay at
some more convenient day, and thereby escape that pen-
alty which the law imposes, the statute is wiped away.
If it is to be wiped away, it should be wiped away by
the Legislature and not by the courts; and, as we have
seen, the Legislature manifests no such purpose."

The final contention of the accused is that this
statute confers a private right on the holder of the check,
which he may forfeit or compromise by settlement of
the private debt. As has already been pointed out, the
crime, if any, is committed at the time the check is drawn.
Subsequent acts of the drawer are of evidential value

only in helping to establish the operative fact of fraudulent intent. It is an elemental principle that a crime, being an offense against the Commonwealth, may not be condoned or excused by an individual so as to cut off the right of the State to prosecute, unless, of course, the statute defining the particular crime specifically so provides, which is not the case here. The acts of the drawer in his dealings with the holder after issuing the check are relevant only insofar as they tend to prove or disprove the actual commission of the crime on the date upon which the check was drawn.

In the course of the trial of this case below, the accused and his wife testified that Mr. Bowers was told that the check would have to be post-dated; the check, it is claimed, was not post-dated because of oversight on the part of the wife of the accused. Mr. Bowers and another witness both denied that there was any suggestion made as to post-dating the check. Bowers testified that this, like all other transactions of the kind, was intended to be on a strictly cash basis. This conflict in the evidence was resolved against the defendant by the court below. Consequently, the case of *Turner* v. *Brenner*, 138 Va. 232, 121 S. E. 510, is inapplicable to the case at bar; for the opinion there recites that the check there involved was determined by the jury to have been accepted by the payee with the knowledge that it was not then good.

It thus appears from the evidence that the accused gave a worthless check for what purported to be a cash transaction. It constituted a violation of the terms of Code, section 4149(44). For the reasons stated, the judgment complained of must be affirmed.

*Affirmed.*