ROBERT L. ROSSER v. COMMONWEALTH OF VIRGINIA.

October 8, 1951.

Record No. 3846.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Tuck, Bagwell & Dillard* and *Edmunds, Whitehead, Baldwin & Graves,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Thomas M. Miller, Assistant Attorney General,* for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

Robert L. Rosser was indicted for grand larceny under the provisions of Code sec. 6-129; for uttering, with intent to defraud the payee, a check drawn upon the Campbell County Bank, of Brookneal, Virginia. The jury returned a verdict of guilty and fixed his punishment at a $100 fine and 12 months confinement in jail. From the judgment entered on that verdict defendant obtained this writ of error.

The principal contention is that the evidence is insufficient to sustain the verdict.

The facts are not controverted and may be stated as follows:

Defendant was an electrician, married and lived with his wife in Lynchburg, Virginia. "He has had epilepsy grand mal type for a number of years. At the present time he has epileptic equivalents, a condition in which he suffers from amnesia." His

condition was aggravated when he became nervous or upset, or when drinking. Defendant was not happily married and his condition was also aggravated by domestic difficulties. When he was living at his parents' home in Brookneal he was more calm and in better health.

Cecil Rosser, defendant's brother, is an electrical contractor, and lives at his parents' home. This brother, knowing that defendant suffered less from his malady when living with his parents, made a verbal agreement with him to the effect that if he would move to the home of his parents, he would give him $1,000, or more, to buy an automobile, title to which was to be registered in the name of Stella Carwile Rosser, the mother.

On Saturday, September 23, 1950, defendant, after inspecting several automobiles that Turner Buick Corporation, of Lynchburg, had for sale, selected one, and agreed to pay $1,395 therefor. He promised to give his check for $1,000 and execute his note for $395, informing the salesman, Joe Barbieri, that he desired title to the automobile to be registered in the name of his mother. Defendant was given possession of the automobile, with a dealer's license tag attached, upon his promise to return to the dealer's office on Monday, September 25th, and pay the note. He left the dealer's place of business at approximately 1:00 p. m. driving the automobile. Some time that afternoon the salesman ascertained that defendant had not signed the check or the note. Between 7:00 and 8:00 p. m. he met defendant on the street and told him that he had not executed the papers. Defendant replied that he thought he had, and willingly returned to the garage and there signed the check and note.

Some time Monday, September 25th, Barbieri 'phoned the Campbell County Bank at Brookneal and was informed that defendant had no funds with which to pay the check. Monday afternoon, between 4:00 and 5:00, defendant 'phoned the Turner Buick Corporation and stated that he would call by and "straighten out that thing." During the telephone conversation defendant stated that he was working at the Epileptic Colony. Barbieri went out to the colony, but was unable to find defendant or any one who knew him. Thereafter, he caused a warrant to be issued charging him with uttering a check with intent to defraud. That night officers, with the warrant, called at defendant's home and found him drinking. He told them that before reaching home that afternoon he started drinking and as

he did not desire to operate the automobile while in that condition, he parked it some distance from his home. He willingly told the officers where the automobile was parked, and turned the keys over to them. The officers took possession of the automobile, arrested defendant and put him in jail.

On Friday, September 29th, within four days from the date of defendant's arrest, his brother paid Turner Buick Corporation the full purchase price of the automobile and had it registered in his mother's name. Defendant, on obtaining bail, moved to the home of his parents, and at the time of the trial was using the automobile.

Section 6-129 of the Code provides: "Any person who, with intent to defraud, shall make or draw or utter or deliver any check * * * for the payment of money, upon any bank, * * * knowing, at the time of such making * * * uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank * * * for the payment of such check * * * shall be guilty of larceny."

There is no presumption of fraudulent intent in this case as there would have been had the check been presented to the bank, payment refused, and the amount not paid within five days after having received written notice of the non-payment of the check. Code, sec. 6-130.

The gravamen of the offense created by the statute is the intent to defraud. Such intent is an indispensable element of the crime, and the burden is on the Commonwealth to prove its existence at the time of drawing or uttering the check. The history of this statute, and the various amendments thereto, were reviewed in *Cook* v. *Commonwealth,* 178 Va. 251, 16 S. E. (2d) 635.

There has been no material amendment to it since the publication of that opinion. The construction there given is the law applicable to this case.

The late lamented Mr. Justice Gregory stated in *Cook* v. *Commonwealth, supra,* that "* * * the 'Bad Check' statute is specifically aimed to discourage the giving of bad checks for what purports to be a cash purchase when the drawer has, instead of the present means, only a vague intention to make the check good some time in the future."

This principle was stated by Mr. Justice Holt in *Page* v. *Wilson,* 168 Va. 447, 455, 191 S. E. 678, in somewhat different

terminology, as follows: "If one can give a check in payment of a purchase, knowing that he has no money in the bank to meet it and with no prospect of having any there, although there be in the back of his mind an intention to pay at some more convenient day, and thereby escape that penalty which the law .imposes, the statute is wiped away * * *."

In the *Cook Case,* it was held that if a defendant has only a vague intention to make the check good some time in the future, the statute has been violated. In *Page* v. *Wilson; supra,* it is held that the intention in the back of defendant's mind to pay a check "at some more convenient day" is no defense to the charge.

■ The crime, if any, is committed at the time the check is uttered. Subsequent acts of the drawer are of evidential value only in helping to establish the existence of the fraudulent intent at that specific time.

When defendant signed this check he was relying on the positive assurance of his brother, Cecil Rosser, who had agreed, and was financially able, to discharge the obligation. Defendant had complied with the conditions that the brother imposed, namely: required the Turner Buick Corporation to register the title to the automobile in his mother's name. Cecil Rosser testified to the effect that he was ready, willing and able to comply with the agreement with his brother, and had he known the circumstances the check would have been paid.

Walter Jones, vice-president-cashier of the Campbell County Bank, testified that if the check had been presented at his bank, before refusing payment and protesting it, he probably would have called defendant's father or brother, and asked them "if they wanted me to return the check."

■ Without stating the evidence in detail, the following acts of defendant, after he had arranged to buy the automobile, negative any fraudulent intent: (1) although he did not sign the check at the time he took possession, 6 or 7 hours thereafter he willingly returned to the dealer's office, signed the check and promised to return Monday and pay the note; (2) while he did not return on Monday, he voluntarily called the dealer's office that afternoon and informed him he would be around shortly "and straighten out that thing;" (3) when the officers found him at his home drinking he willingly turned the keys to the automobile over to them and told them where it was parked; (4) defendant suffered from epilepsy in its worst form and loss of

memory when drinking, and he was drinking on Monday afternoon and night; and (5) pursuant to defendant's instructions to Turner Buick Corporation, when the check was paid by the brother on September 29th, title to the automobile was registered in the name of defendant's mother.

Inconsistent statements made by defendant to the officers at the time of his arrest are insufficient to establish fraudulent intent when such statements are considered with the other evidence in the case.

The judgment of conviction is reversed and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*