# Richmond

## SIMEON MAKAROV V. COMMONWEALTH OF VIRGINIA.

October 8, 1976.

Record No. 751263.

Present, All the Justices.

*Louis Koutoulakos,* for plaintiff in error.

*Jim L. Chin, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Compton, J., delivered the opinion of the court.

We consider in this criminal case whether a part of Code § 40.1-29 is unconstitutional on its face, upon the ground that it authorizes imprisonment for failure to pay a debt.

We examine the following pertinent provisions of the statute, codified in Article 2 of Chapter 3 of Title 40.1, captioned "Labor and Employment":

"**§ 40.1-29. Time ... of payment; ... penalty for violation of section; ...** — (a) All employers operating a business shall establish regular pay periods and rates of pay for employees except executive personnel and shall pay salaried employees at least once each month and employees

paid on an hourly rate at least once every two weeks or twice in each month. *Upon termination of employment an employee shall be paid all wages or salaries due him for work performed prior thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated.*

\* \* \*

"(d) *An employer who violates this section shall be guilty of a misdemeanor.*" (emphasis added).[1]

Defendant Simeon Makarov was tried July 7, 1975 by a jury on nine indictments for failure to pay wages in violation of the above statute. He was sentenced in accordance with the jury's verdicts to 30 days in jail and a fine of $1,000 on each charge. The writ of error to the July 10, 1975 judgments of conviction was limited to dual grounds, but determination of the foregoing single issue disposes of the case.

Defendant was president and majority stockholder of Swimming Pool Management Co., Inc., which had its principal place of business in Alexandria. During the summer of 1974, defendant provided lifeguard services for approximately 100 swimming pools in the Washington, D. C.-Northern Virginia area. Makarov's customers included the owners of hotels, motels, apartments and health clubs. The complaining witnesses, who were summer employees of defendant and students either in high school or college, testified they did not receive their final paychecks by about Labor Day (September 2), 1974, the time of their next regularly-scheduled payday had their employment not been terminated. In most cases the delinquent amount represented payment for the employee's final two weeks of work. The evidence showed that when the employees sought to obtain timely payment of these wages, defendant was evasive, rude, abusive and "unavailable". At the time of trial, however, all except one complainant had been fully paid the wages due for the period in question.

---

[1] The statute in its present form was enacted in 1962, when former Code § 40-24 (1953 Repl. Vol.) was completely rewritten, and provided a fine upon violation of the section. Acts 1962, c. 66 at 107-08; *Report of the Virginia Advisory Legislative Council, S. Doc. No. 8* at 9, 18 (1961). The provision for a jail term was added to the penalty in 1966. Acts 1966, c. 88 at 159-60.

Defendant's evidence showed that even though his business remained solvent during the late summer and fall of 1974, about 50 per cent of his customers, who had agreed to pay for his services on a regular basis, were in arrears, resulting in defendant's inability to promptly meet the last payroll for the summer of 1974. But an official of the National Swimming Pool Institute testified that in businesses similar to defendant's no more than ten per cent of the business accounts were delinquent at the end of a summer.

The record further shows that during an investigation of the employees' complaints, conducted by the Virginia Department of Labor and Industry prior to indictment, defendant assigned additional specific reasons for failure to pay the disputed wages, such as: one employee had not submitted complete time records to the supervisor; another employee had not properly cleaned the pool on the last day of employment; and another employee's time records did not accurately reflect the time worked because the employee took excessive time for "lunch breaks".

Defendant argues the foregoing statutory provisions are patently unconstitutional because they permit imprisonment for a mere failure to pay a debt. He contends the vice in the statute is the failure to require, as an element of the crime, an intent to defraud.

The Commonwealth contends that the statute "does not provide imprisonment merely for unpaid debts; rather, § 40.1-29 prohibits the deliberate and willful failure or refusal of an employer, when able, to pay employees their regularly scheduled wages." Pointing out that a statute should be interpreted "so as to uphold its constitutionality if this can be reasonably done", the Attorney General contends that when, as here, there is no express language "on the face of the statute as to the intent on the part of the employer in his refusal to pay the wages when due", the courts will read into the statute a *mens rea* or *scienter* requirement, to avoid declaring it unconstitutional. We do not agree with these contentions and reverse.

In Virginia the system of imprisonment for debt was abolished in 1849, when the predecessor to Code § 8-400, which

prohibits issuance of a writ of capias ad satisfaciendum,[2] was enacted. Code 1849, ch. 188, § 2 at 716; *Report of Revisors of Virginia Code,* 1849, at 838-43; *Kidd* v. *Virginia Deposit Co.,* 113 Va. 612, 615, 75 S.E. 145, 146 (1912). A majority of the states, by specific constitutional provision, now prohibit enforcement of commercial obligations by imprisonment for debt; criminal penalties are not permitted against "the honest but insolvent debtor." Note, *Imprisonment for Debt: In the Military Tradition,* 80 Yale L. J. 1679, 1679 (1971). The United States Constitution contains no express provision against imprisonment for debt, but the federal district courts follow the laws of the various states in which they sit wherein imprisonment for debt has been abolished. 28 U.S.C. § 2007 (1964).

■ Likewise, there is no explicit proscription in Virginia's Constitution against imprisonment for debt.[3] But it is nevertheless established in this State that a person may not be imprisoned, absent fraud, for mere failure to pay a debt arising from contract or for mere failure to pay a judgment for a debt founded on contract. *See* Code § 8-400; *Overstreet* v. *Commonwealth,* 193 Va. 104, 111, 67 S.E.2d 875, 879 (1951); *West* v. *West,* 126 Va. 696, 699, 101 S.E. 876, 877 (1920); *Rinehart & Dennis Company, Inc.* v. *McArthur,* 123 Va. 556, 563, 96 S.E. 829, 831 (1918). *See also* Code §§ 8-569, 8-576. *Contra,* Smith, *The Constitutionality of Bimonthly Pay Day Laws,* 16 Tenn. L. Rev. 940, 948 (1939-1941). There is no doubt that imprisonment of poor debtors offends fundamental principles of justice in today's ordered society. Indeed, as early as 1849 imprisonment for debt in Virginia was regarded "as inconsistent with the liberal and enlightened spirit of the age." *Report of Revisors, supra,* at 843.

■ In this setting, we turn to the statutory provisions under attack. The clear language subjects all employers [4] operating a business to the possibility of a jail sentence for a mere failure to

---

[2] A "capias ad satisfaciendum" is defined as a writ of execution commanding the "sheriff to *take* the party named, and keep him safely, so that he may have his body before the court on a certain day, *to satisfy* the damages or debt and damages in certain actions. It deprives the party taken of his liberty until he makes the satisfaction awarded." Black's Law Dictionary 262 (Rev. 4th ed. 1968).

[3] Accordingly, the cases here relied on from other jurisdictions decided under specific constitutional prohibitions for incarceration for debt are of slight value.

[4] "§ 40.1-2. **Definitions.** — As used in this title, unless the context clearly requires otherwise, the following terms have the following meanings:

pay, within the time limits set forth, all wages or salaries due an employee; in effect, it permits detention for the mere failure to pay a contract debt. There are no qualifications or exceptions. The imprisonment is not on account of criminal conduct, but may be as the result of insolvency, indigence or non-criminal behavior. Ability to pay is not a factor. There is no requirement of an intent to defraud, *cf. Overstreet, supra,* construing Code § 43-13, nor is it essential that wilfulness tantamount to fraud be proved.[5] The indebtedness, and not a criminal act, is the determining feature in establishing guilt. It is thus apparent that the provisions in question, while aimed at accomplishing the legitimate legislative purpose of assuring employees prompt payment of wages due, arbitrarily discriminate against employers who are *bona fide* insolvent and deny such persons equal protection of the laws under the Fourteenth Amendment. *See Abbit* v. *Bernier,* 387 F. Supp. 57 (D. Conn. 1974).

The Commonwealth does not take issue with the foregoing concept, but, relying on *Maye* v. *Commonwealth,* 213 Va. 48, 49, 189 S.E.2d 350, 351 (1972), maintains we should read into the statute, to sustain its validity, a requirement of criminal intent, in which case the punishment would be for the criminal act and not for the debt. We disagree.

In *Maye,* we construed former Code § 18.1-163 (now § 18.2-117), which declared that a bailee of any animal, aircraft, vehicle, boat or vessel, was guilty of larceny if he failed to return the bailed property to the bailor in accordance with the bailment agreement. We upheld the constitutionality of the enactment and decided that a requirement of *mens rea* or *scienter* should be read into the statute because it appeared the General Assembly "implicitly intended" that such be proved. 213 Va. at 49, 189 S.E.2d at 351. There, we construed a statute specifically dealing

* * *

"(3) 'Employer' means an individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within the State who employs another to work for wages, salaries, or on commission and shall include any similar entity acting directly or indirectly in the interest of an employer in relation to an employee."

[5] The trial judge charged the jury that a "wilful" failure to pay was required for conviction, but the instructions did not include a definition of that word, which has varying meanings depending on the context in which the word is used.

with larceny, a crime which presupposes a *mens rea*. But here the statute on its face deals with a naked civil debt and we cannot say the General Assembly implicitly meant to include proof of an intent to defraud as an essential element of the offense.

For these reasons we declare the foregoing provisions of Code § 40.1-29 unconstitutional. Consequently, the judgments of conviction will be reversed and the indictments will be dismissed.

*Reversed and dismissed.*