## Richmond

CHARLES EVERETTE PAYNE, JR.

v.

COMMONWEALTH OF VIRGINIA

September 11, 1981.

Record No. 801452.

Present: All the Justices

*John B. Mann (Levit & Mann,* on brief), for appellant.
*Vera S. Warthen, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

This is an appeal from a conviction under the Virginia Bad Check Law, Code §§ 18.2-181 to -185 (Cum. Supp. 1980).

Pursuant to an oral agreement, Clarence Hudson and the defendant, Charles E. Payne, Jr., conducted a wholesale furniture business, a venture both characterized as a partnership. Hudson agreed to buy the inventory and pay all operating expenses, and Payne agreed to do the selling and share the losses in exchange for a commission and a share of the profits. By letter dated July 12, 1972, Hudson advised Payne that the partnership was dissolved. Upon advice of counsel, Payne decided to form a corporation and continue doing business alone. The articles of incorporation were delivered to the State Corporation Commission on July 28, 1972, and, on August 2, 1972, the Commission granted a charter to Ideal Furniture Industries, Inc.

Meanwhile, on August 1, 1972, Hudson and Payne met to settle accounts. Inventories conducted on July 12 and 27 showed that Payne had withdrawn $4,191.94 worth of furniture from the warehouse, and Hudson had paid several inventory invoices and certain bills for business expenses. Hudson claimed that Payne owed him $8,574.17, and Payne gave him a check dated August 1, 1972 for that sum. Payne wrote the check on a form bearing the printed name and address of a local bank. A handwritten notation

at the top stated: "Ideal Furniture Industries, Inc., P. O. Box 3515, Richmond, Va. 23234." Payne signed the check in proper person and gave it to Hudson with the assurance that it was "as good as gold."

The bank dishonored the check, and Hudson notified Payne by registered mail and demanded payment. Payne signed the return receipt, and the five-day period prescribed in Code § 18.2-183 lapsed without payment. Upon Hudson's complaint, Payne was indicted under the Bad Check Law and convicted by the trial court, sitting without a jury. By final order entered May 13, 1980, imposition of sentence was suspended for five years, conditioned, *inter alia*, upon "restitution for any amount due by reason of the check, if any, at the rate of $200.00 per month."

On appeal, Payne contends that the business venture was a partnership; that "the assets of the business were partnership property"; that those assets retained this status until the affairs of the partnership were settled; and that the partners "share[d] equal rights in partnership property." Based upon these premises and reasoning that a person cannot steal something in which he has a proprietary interest, Payne concludes that "there can be no larceny of such property by either partner."[1]

While the record is unclear, we will assume, for purposes of this opinion, that the evidence supports the premises Payne posits and that the conclusion he draws is a viable defense to a charge of common law larceny. But Payne was not charged with that offense. Common law larceny is " 'the *wrongful or fraudulent taking of personal goods* of some *instrinsic value,* belonging to *another,* without his *assent* and with the intention to *deprive* the owner thereof *permanently.*' (Italics in the text.)" *Vaughan* v. *Lytton,* 126 Va. 671, 679, 101 S.E. 865, 867 (1920). Payne was convicted of an offense unknown at common law. The statute under which he was indicted provides that "[a]ny person who, with intent to defraud, shall make or draw or utter or deliver any check . . . for the payment of money, upon any bank . . . know-

---

[1] "As each partner is the ultimate owner of an undivided interest in all the partnership property, none of such property can be said, with reference to any partner, to be the property of another. It is therefore generally held that a partner cannot be convicted of larceny of partnership property which he has appropriated to his own use."
Wharton's Criminal Law, Section 500, quoted and applied, *Patterson* v. *Bogan,* 261 S.C. 87, 91, 198 S.E.2d 586, 588 (1973). *See generally,* Annot. 82 A.L.R.3d 822 (1978); 50 Am.Jur.2d, *Larceny,* §§ 86, 87.

ing . . . that the maker or drawer has not sufficient funds in . . . such bank . . . for the payment of such check . . . shall be guilty of larceny." Code § 18.2-181. The elements of the statutory offense are materially different from those of common law larceny, and the difference renders the defendant's arguments wholly inapposite.

To prove common law larceny, the Commonwealth must show that the accused wrongfully acquired possession of personal goods belonging to another. As Payne notes on brief, "there was no contemporaneous transfer of either goods or services in exchange for the check." But such a transfer is not an element of the statutory offense. To prove a bad-check offense, "[i]t need not be shown . . . that anything was received in return for the check," for "the offense is complete when, with the requisite intent, a person utters a check he knows to be worthless." *Warren* v. *Commonwealth*, 219 Va. 416, 422, 247 S.E.2d 692, 695 (1978). *See also Patterson* v. *Commonwealth*, 216 Va. 306, 308, 218 S.E.2d 435, 437 (1975); *Rosser* v. *Commonwealth*, 192 Va. 813, 816-17, 66 S.E.2d 851, 853 (1951).

■ The material facts disclosed by the record are not in dispute. Payne uttered a check drawn on a bank for the payment of money. The bank dishonored the check. Hudson gave Payne written notice of dishonor by registered letter. Payne acknowledged receipt of notice but failed to make payment within five days. These facts constitute "prima facie evidence of intent to defraud or of knowledge of insufficient funds . . . ." Code § 18.2-183. There was no evidence sufficient to overcome this statutory presumption, *see Cook* v. *Commonwealth*, 178 Va. 251, 258, 16 S.E.2d 635, 638 (1941), and we hold that the proof establishes every element of the offense charged.

In an alternative argument, Payne contends that the check was drawn on a corporate rather than a personal account, and he questions whether, considering Code §§ 18.2-181, -182 together, such a check is within the proscription of the Bad Check Law. But the record shows that the corporation was not in existence on August 1 when the check was drawn and delivered, *see* Code § 13.1-52, and that Payne's signature was personal and not qualified by corporate title.

Although, in light of these circumstances, the question Payne poses is not ripe for adjudication, we observe that Code § 18.2-181 proscribes "any [worthless] check" made, drawn, uttered, or deliv-

ered with fraudulent intent by "any person," and that it does so without distinguishing between personal and corporate bank accounts. As Payne points out, some such distinction is implicit in Code § 18.2-182,[2] but we reserve judgment as to what effect this section may have upon the scope of the preceding section until the question is properly before us.

Finding no error below, we will affirm the judgment.

*Affirmed.*

THOMPSON, J., dissenting.

The record reveals that on September 22, 1972, Hudson filed a motion for judgment against Payne alleging that they terminated their partnership by mutual agreement on July 12, 1972; that on August 1, 1972, the partners met at the office of Hudson's attorney, where Payne agreed to pay Hudson $8,574.17 "which amount represents that portion which is owed by [Payne] to [Hudson] in the dissolution of the . . . partnership"; and that Payne gave Hudson a check in the amount of $8,574.17 which the bank returned with the notation "not sufficient funds." Payne did not contest the motion for judgment, and the court entered judgment on the claim on November 9, 1972. The record makes further reference that Payne initiated bankruptcy proceedings to discharge this indebtedness.

Seven years later, on December 10, 1979, the grand jury returned this indictment against Payne alleging that on or about August 1, 1972, Payne "did . . . obtain by means of a worthless check merchandise in the amount of $100.00 or more with intent to cheat and defraud Clarence W. Hudson . . . ."

The majority opinion states:

As Payne notes on brief, "there was no contemporaneous transfer of either goods or services in exchange for the

---

[2] This section proscribes utterance of a worthless check drawn by any person "on behalf of any business firm or corporation, for the purposes of paying wages to any employee of such firm or corporation, or for the purpose of paying for any labor performed by any person for such firm or corporation."

check". But such a transfer is not an element of the statutory offense. To prove a bad-check offense, "[i]t need not be shown . . . that anything was received in return for the check", for "the offense is complete when, with the requisite intent, a person utters a check he knows to be worthless." [Citations omitted.]

I do not agree with this interpretation. The present statute, Code § 18.2-181, makes Payne's offense larceny. This poses the question "larceny of what?". In 1978, the legislature clarified the statute's purpose with this amendment:

Any person making, drawing, uttering or delivering any such check, draft or order in payment as *a present consideration* for goods or services for the purposes set out in this section shall be guilty as provided herein. [Emphasis added.]*

The Bad Check Act applies a criminal sanction only when a person with the requisite criminal intent utters a worthless check as a present consideration for cash or a cash purchase.

The final order of conviction in this case, entered May 13, 1980, suspends imposition of any sentence for a period of five years dependent upon several conditions which include that Payne "make full restitution for any amount due by reason of the check, if any, at the rate of $200.00 per month."

In the present case this court uses the criminal sanction to collect a civil debt, a practice we previously disapproved. *Cf. Makarov* v. *Commonwealth,* 217 Va. 381, 228 S.E.2d 573 (1976). This court should not countenance an obvious perversion of the criminal process.

---

* This prosecution is controlled by the statute in effect in 1972. The 1978 amendment was obviously intended to clarify the meaning of the statute.