Present: Lemons, C.J., Goodwyn, McClanahan, Powell, Kelsey, and McCullough, JJ. and Koontz, S.J.

DANIEL ERNEST McGINNIS

v. Record No. 180055

COMMONWEALTH OF VIRGINIA

OPINION BY
SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
December 13, 2018

FROM THE COURT OF APPEALS OF VIRGINIA

Daniel Ernest McGinnis appeals from a judgment of the Court of Appeals of Virginia affirming his convictions in a bench trial in the Circuit Court of the City of Lynchburg on three counts of larceny by worthless check in violation of Code § 18.2-181. The Court of Appeals affirmed McGinnis' convictions without reaching the merits of his sole assignment of error which challenged, as a matter of law, the sufficiency of the evidence to support his convictions. Relying primarily upon its interpretation of the provisions of Code § 8.01-271.1 and its review of the undisputed procedural facts of this case, the Court of Appeals held that McGinnis' assignment of error was not preserved for appeal in the circuit court under the requirements of Rule 5A:18. *McGinnis v. Commonwealth*, 68 Va. App. 262, 274 (2017).

Consistent with our Rule 5:17(c)(1), McGinnis has assigned error to the judgment of the Court of Appeals. We take this opportunity to stress that the failure of counsel to heed the directives of Rule 5:17(c)(1)(ii) that only "assignments of error relating to assignments of error presented in, and to actions taken by, the Court of Appeals may be included in the petition for appeal to this Court" and "[i]f the error relates to failure of the Court of Appeals to rule on any issue, error must be assigned to such failure to rule," are among the principal reasons an appeal from the Court of Appeals is dismissed by this Court without a review of the merits of the underlying claim. *See*, *e.g.*, *Davis v. Commonwealth*, 282 Va. 339 (2011).

We granted McGinnis this appeal on the following assignments of error:

I.      The Court of Appeals erred in finding that Mr. McGinnis' assignment of error was not preserved for appeal under Rule 5A:18 and thus not addressing the merits of the issue.

II.     The Court of Appeals erred in denying appellant's counsel's motion to this Court to sign a copy of the Motion filed in the trial court and have that newly signed copy then added to the record on appeal.

III.    The Trial Court erred in convicting Mr. McGinnis of three counts of larceny by worthless check, in violation of Va. Code §18.2-181, as the evidence was insufficient as a matter of law.

In cases where the Court of Appeals has determined that it cannot reach the merits of an assignment of error because of a procedural bar, we review *de novo* that court's application of its rules to determine whether the procedural bar was properly applied. *Jay v. Commonwealth*, 275 Va. 510, 517 (2008). In this context, we begin our review of this case with a summary of the appellate proceedings that resulted in the Court of Appeals affirming McGinnis' convictions without reviewing the merits of his assignment of error.

## A.  Proceedings Relevant to Preservation of Error in the Circuit Court and Court of Appeals

The circuit court entered final judgment against McGinnis in a sentencing order dated December 29, 2016. On January 18, 2017, the twentieth day after entry of the final judgment, McGinnis filed a pleading styled as a "motion to set aside verdict and for a new trial." Therein, McGinnis contended that the evidence was insufficient to sustain his convictions because the

Commonwealth failed to prove that the checks at issue were "not in payment of a debt," and had been passed with an intent to defraud.[1]

The motion was signed by McGinnis personally and served on the Commonwealth's Attorney. However, the motion had no provision for a signature by his trial counsel nor does the certificate of service indicate that a copy of the motion was served on his trial counsel. On January 19, 2017, the final day of the circuit court's jurisdiction under Rule 1:1, the circuit court considered the motion and entered an order denying McGinnis' motion to set aside the verdict and for a new trial.

On January 20, 2017, McGinnis' appellate counsel[2] filed a notice of appeal "from the final judgment of the Lynchburg Circuit Court entered on December 29, 2016." On April 19, 2017, McGinnis' counsel electronically filed a petition for appeal in the Court of Appeals asserting one assignment of error:

> The Trial Court erred in convicting Mr. McGinnis of three counts of larceny by worthless check, in violation of Va. Code §18.2-181, as the evidence was insufficient as a matter of law.

In compliance with Rule 5A:12(c)(1), McGinnis averred that this error had been preserved in the "Motion to Set Aside filed January 18, 2017, and Order dated January 19, 2017." The Court of Appeals granted McGinnis an appeal on this assignment of error in an order dated June 7, 2017.

---

[1] McGinnis also asserted that he had been denied effective assistance of counsel. Former Code § 19.2-317.1, repealed in 1990, provided for appellate review of a claim of ineffective assistance of counsel "if all matters relating to such issue are fully contained within the record of the trial." Since the repeal of that statute, we have consistently held that claims of ineffective assistance of counsel, *even if asserted during proceedings in the circuit court*, are not reviewable on direct appeal, but must be raised in a petition for a writ of habeas corpus after exhaustion of all appellate remedies. *Sigmon v. Dir. of the Dep't of Corr.*, 285 Va. 526, 533 (2013).

[2] McGinnis was represented by different members of the local public defender's office at trial and in the subsequent appeals.

On October 3, 2017, after McGinnis and the Commonwealth filed their briefs and the appendix for the appeal, a deputy clerk of the Court of Appeals advised the parties that "[t]he panel of judges assigned this appeal ask that you be prepared to answer the following question at oral argument:

> Is a motion to set aside the verdict that was signed by the defendant but was not signed by the defendant's attorney of record sufficient to preserve an issue for appellate review?  See Code Section 8.01-271.1."

On October 4, 2017, McGinnis' appellate counsel "requested to sign the original Motion that is located in the Lynchburg Circuit Court Clerk's Office.  The Clerk's Office denied this request . . . and did not permit him to sign the original Motion." *McGinnis*, 68 Va. App. at 266. On October 6, 2017, McGinnis' appellate counsel, relying upon Code § 8.01-271 which allows for counsel to sign a previously unsigned motion if this is accomplished promptly after the matter is brought to his attention, filed a motion in the Court of Appeals to amend the record to include a copy of the post-conviction motion with his signature appended.[3]

On October 11, 2017, the Court of Appeals heard oral argument in the appeal.  At that time the Court asked McGinnis' counsel whether a *pro se* motion "raised at the last second" provided the circuit court with an opportunity to rule on the issue and, thus, preserve it for appeal.  *See*, *e.g.*, *Commonwealth v. Bass*, 292 Va. 19, 26 (2016) (an objection must be raised "at a point in the proceeding when the trial court is in a position not only to consider the asserted error, but also to rectify the effect of the asserted error").  Counsel conceded that had the circuit court not ruled on the motion before it lost jurisdiction over the case, the appeal likely would be

---

[3] The majority of the circuit courts now transmit records of cases on appeal to the appellate courts electronically, retaining the paper record in the local clerk's office.  Rule 5A:10A; Rule 5:13A.  Although the physical record is retained by the circuit court, jurisdiction over the record rests with the appellate court while an appeal is pending.  Rule 5A:7; Rule 5:15; *see also Granado v. Commonwealth,* 292 Va. 402, 408 (2016).

procedurally barred. However, counsel asserted that because the circuit court "very specifically took it upon itself to review the motion" and enter an order reflecting that it had in fact reviewed it, the contemporaneous objection rule was satisfied.

The Court of Appeals then asked counsel to address the significance of McGinnis having been "represented by counsel throughout the entire time in the trial court," and, thus, "he was never *pro se*." McGinnis' counsel, while conceding that McGinnis was "technically represented by counsel," contended that the filing of the motion *pro se* "does not matter in this case." McGinnis' counsel contended that Code § 8.01-271.1 provides a safe harbor in that "[i]f a pleading, written motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant." Counsel contended that the first notice he had that the motion was not signed by trial counsel was when the Court of Appeals advised the parties to be prepared to address the issue. Counsel maintained that by seeking to sign the order in both the circuit court and by the motion to enlarge the record in the Court of Appeals, he had acted promptly to correct trial counsel's failure to sign the motion.

Addressing the procedural issue in its opinion, the Court of Appeals relied upon our decision in *Shipe v. Hunter*, 280 Va. 480, 484 (2010), for the principle that a represented party generally is not permitted to file *pro se* pleadings. The Court of Appeals further relied upon the provision in our Rule 1:4(c) that "[c]ounsel or an unrepresented party who files a pleading shall sign it," finding that the use of the disjunctive "or" indicated that represented parties were not authorized to sign pleadings. Similarly, the Court of Appeals noted that our Rule 1:5(c) makes reference to unrepresented parties being permitted to file pleadings.

5

The Court of Appeals opined that "just because the circuit court efficiently ruled on appellant's Motion does not somehow validate an improperly executed motion so that it then preserves for appeal any arguments raised in that Motion." Additionally, the Court of Appeals opined that "we do not think the General Assembly intended for Code § 8.01-271.1 to permit counsel to remedy a signature defect by finally signing a pleading long after the case is on appeal to a different court — and no longer within the circuit court's jurisdiction." Accordingly, the Court of Appeals held that McGinnis' assignment of error was not preserved for appeal under Rule 5A:18 and affirmed McGinnis' convictions.

## B. Analysis of the Procedural Issue

We begin our analysis of this issue by addressing the Court of Appeals' application of *Shipe*. *Shipe* is the most recent in a series of cases in which we have addressed the efficacy of a pleading "signed only by a person . . . who is not licensed to practice law in Virginia." 280 Va. at 483; *see also*, *e.g.*, *Aguilera v. Christian*, 280 Va. 486 (2010); *Kone v. Wilson*, 272 Va. 59 (2006); *Nerri v. Adu-Gyamfi*, 270 Va. 28 (2005); *Wellmore Coal Corp. v. Harman Mining Corp.*, 264 Va. 279 (2002). In *Shipe*, the issue was whether an attorney not licensed to practice law in Virginia could sign a pleading on behalf of a Virginia attorney in his capacity as "co-counsel" without having been admitted to practice *pro hac vice*, 280 Va. at 482, while in *Aguilera*, decided the same day as *Shipe*, we considered whether a *pro se* litigant may validly authorize a person not licensed to practice law in Virginia to sign a pleading on the litigant's behalf. *Aguilera*, 280 Va. at 487. In *Wellmore Coal* the issue was whether a pleading signed only by a foreign attorney admitted *pro hac vice* was sufficient where it was not also signed by a Virginia attorney in violation of Rule 1A:4. 264 Va. at 281. In *Kone* the issue was whether the administrator of a decedent's estate may file a wrongful death action *pro se*, 272 Va. at 61, and

6

*Nerri* involved a pleading signed by an attorney whose license to practice in Virginia was under suspension. 270 Va. at 29.

In each of these cases we held that such pleadings were "invalid." *Shipe*, 280 Va. at 485; *Aguilera*, 280 Va. at 489; *Kone*, 272 Va. at 63; *Nerri*, 270 Va. at 31; *Wellmore Coal*, 264 Va. at 283. In none of these cases, however, were we required to consider the efficacy of a pleading filed *pro se* by a represented party. Likewise, in *Spencer v. Commonwealth*, 238 Va. 295 (1989), the issue was not the efficacy of a pleading filed *pro se* by a represented criminal defendant, but whether a criminal defendant could serve as his own co-counsel in order to assert control over the presentation of his case at trial. *See id.* at 302-03. Thus, while these cases may have some instructional value in the analysis of the issue presented in the present case, none is sufficiently on point to be dispositive of that issue.

There can be no question that "every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record" or by a party "proceeding *pro se.*" Code § 8.01-271.1. Likewise, Rule 1:4(c) provides that "[c]ounsel or an unrepresented party who files a pleading shall sign it." Rule 1:5 provides in subparts (a) and (b) for the identification of attorneys of record who may sign pleadings, while subpart (c) provides that "a party who is not represented by an attorney . . . shall sign every pleading, motion, or other paper that he or she serves or files."

Neither Rule 1:4 nor Rule 1:5 provides for any sanction for the failure to sign a pleading. Code § 8.01-271.1, in pertinent part, identifies two potential circumstances and sanctions. First, it provides that "[i]f a pleading, written motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant." It further provides that "[i]f a pleading, motion, or other paper *is signed or made* in violation of

7

this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction." (Emphasis added.) When reading the statute as a whole, however, it is clear that this second sanction is meant to apply to *signed* written pleadings which are in violation of the statute's principal prohibition against making inadequately supported, frivolous or vexatious pleadings and motions. Thus, the only sanction provided for where a pleading is not signed by either an attorney of record or a party is for that pleading to be stricken "unless it is signed promptly after the omission is called to the attention of the pleader or movant."

In the Court of Appeals and again on appeal to this Court, McGinnis's counsel has contended that because the absence of the signature of an attorney of record was not "called to the attention" of the parties until the issue was raised *sua sponte* by the Court of Appeals, the pleading had not yet been stricken and was still subject to cure by the appending of his signature. This argument, however, misses the point. The safe harbor provision of Code § 8.01-271.1 does not apply in this case simply because it applies only where the "pleading, motion, or other paper is *not signed*." (Emphasis added.) The motion to set aside the verdict filed January 18, 2017 was signed *by McGinnis*. Accordingly, we need not address McGinnis' second assignment of error in this appeal. This conclusion, however, also lays bare the fact that Code § 8.01-271.1 provides no express remedy to the circumstances of this case. The statute simply does not contemplate a pleading signed by a party who may or may not have authority to do so.

The Commonwealth urges us to construe the language of the statute permitting "[a] party who is not represented by an attorney" to file a pleading *pro se* as implicitly meaning that a party who *is* represented by an attorney may not do so. Applying this construction, the Commonwealth contends that the present case is no different than *Wellmore Coal* and its

8

progeny and should result in finding that McGinnis' motion is invalid and a nullity. Because in this case we are of opinion that we can assume without deciding that the merits of McGinnis' assignment of error were properly before the Court of Appeals, it is not necessary to adopt or reject the Commonwealth's contentions.

We can certainly envision circumstances where a criminal defendant, for example being unable to contact his counsel or having counsel refuse to act on his behalf and facing the expiration of the 21-day period under Rule 1:1, would wish to prosecute a post-verdict motion *pro se*. The record in the present case does not reflect why trial counsel did not sign McGinnis' post-conviction motion. Nevertheless, we conclude that we are unable to make a determination of this issue in the present case because it is the function of appellate courts to interpret statutes passed by the General Assembly, not to add language to them to address situations perhaps not contemplated when the legislation was drafted.[4] "Courts cannot 'add language to the statute the General Assembly has not seen fit to include.' *Holsapple v. Commonwealth*, 266 Va. 593, 599 (2003). '[N]or are they permitted to accomplish the same result by judicial interpretation.' *Burlile v. Commonwealth*, 261 Va. 501, 511 (2001)." *Washington v. Commonwealth*, 272 Va. 449, 459 (2006).

In any event, in cases where the ability of the Court to review an issue on appeal is in doubt, we may "assume without deciding" that the issue can be reviewed provided that this permits us to resolve the appeal on the best and narrowest grounds. *See*, *e.g.*, *Commonwealth v. White*, 293 Va. 411, 419 (2017). Accordingly, we will assume, without deciding, that the circuit

---

[4] While we have not addressed the validity of a supplemental pleading filed *pro se* by a person represented by counsel, the circumstances of this case are likely to recur in the future and, thus, we presume that the General Assembly will seek to clarify its intent with respect to the signing of pleadings by represented parties if it is so inclined.

court's ruling on the motion to vacate McGinnis' convictions was properly before the Court of Appeals.

Because we do not resolve the procedural issue upon which the Court of Appeals based its judgment, we will reverse that judgment. However, finding that we can resolve this appeal on its merits by addressing *de novo* the question of law presented by McGinnis' third assignment of error and enter final judgment here, we need not remand the case to the Court of Appeals. *Town of Leesburg v. Giordano*, 280 Va. 597, 611 (2010) (holding that where an appeal presents a pure question of law, remand is unnecessary if final judgment may be entered on appeal).

### C. *Proceedings in the Circuit Court Relevant to the Merits of the Third Assignment of Error*

McGinnis was the owner of "Quest Media," an event planning service. Quest Media had an agreement with the Kirkley Hotel ("the Kirkley") to hold events at the hotel. Under this agreement, McGinnis was authorized to collect money for the Kirkley as an authorized vendor. McGinnis was also permitted to collect for guest rooms used by event attendees and for the food and beverages prepared and served by the Kirkley at Quest Media events. McGinnis was then required to pay the Kirkley for these expenses.

In early 2015, Quest Media and McGinnis held two events at the Kirkley. On the weekend of February 27-28, Quest Media sponsored an event described as "Walton's Homecoming 2015." In addition to the use of the Kirkley's facilities and services, Quest Media incurred expenses for guest rooms between February 26 and March 3, 2015. A program called "Dead End Con" was held at the Kirkley on April 17-19, 2015 with Quest Media incurring expenses for guest rooms, facilities and services between April 16-20, 2015.

According to the Kirkley's accounting statements for these events, the expenses for Walton's Homecoming 2015 were billed to Quest Media, while those for the Dead End Con

10

were billed directly to McGinnis on separate accounts for the guest rooms and for the food and beverages. As relevant to this appeal, the accounting statements show that McGinnis on behalf of Quest Media issued two checks on its account with Woodforest National Bank to the Kirkley. The first check, number 1101, in the amount of $2,651.04 and dated April 18, 2018 was posted to the Dead End Con guest rooms account on April 24, 2015. The second check, number 1106, in the amount of $303.40 and dated April 20, 2015 was posted to the Dead End Con food and beverages account on April 24, 2015. Both checks were deposited by the Kirkley on April 28, 2015. McGinnis issued a third check, number 1130, drawn on Quest Media's account with Bank of America, in the amount of $1,600.00 and dated May 15, 2015. The check was posted by the Kirkley to the Walton's Homecoming 2015 account that day and deposited on May 19, 2015. Check numbers 1101 and 1106 were returned by Woodforest National Bank on May 5, 2015 for "not sufficient funds." Check number 1130 was returned by Bank of America on May 22, 2015 also for "not sufficient funds."

On June 2, 2015, the Kirkley sent McGinnis and Quest Media a certified letter informing McGinnis of the returned checks and requesting immediate payment for the total amount of $4,554.44. The Kirkley received the return receipt for this letter showing that it had been delivered on June 5, 2015. Two additional letters sent to McGinnis later that month were returned by the postal service as undeliverable with no forwarding address.

On August 4, 2015, a felony arrest warrant was issued against McGinnis charging him with three violations of Code § 18.2-181 for larceny by worthless check. Following McGinnis' arrest, the case was certified to the Lynchburg Grand Jury which returned an indictment dated April 4, 2016 against McGinnis charging him with these violations of Code § 18.2-181.

11

McGinnis' bench trial was held October 25, 2016.  As relevant to this appeal, Travis Cozel, the staff accountant for the Kirkley, testified that he received two of the checks from McGinnis and that the third was received by "another agent" of the hotel.  Cozel further testified that he did not recall having received any special instructions from McGinnis to hold the checks for deposit, but that he would have followed any instructions that he had received.

McGinnis testified that he typically would present a check for payment on a Quest Media account to a sales representative at the Kirkley on a Friday of an event and request that it not be deposited until the following Monday because the funds necessary to cover the checks would be collected during the weekend and deposited the following Monday.  He maintained that this was the common practice under this agreement with the owner of the Kirkley.  He further maintained that he would have followed this practice with regard to the three checks at issue.

On cross-examination, McGinnis conceded that he knew the three checks had been returned for insufficient funds.  He maintained that he did not intend to defraud the Kirkley because at that time he had "five or six more [events] on the books" from which he intended to pay off existing and future debts to the Kirkley.  However, in June 2015, McGinnis abruptly closed Quest Media, vacated his leased office space, and plans for further events at the Kirkley were cancelled.

In its summation, the circuit court noted that there was no evidence as to what agreement McGinnis may have had with the Kirkley with respect to holding the checks apart from his claim to have discussed this with the hotel's owner.  The court expressly stated that it did not find McGinnis' assertion of such an agreement with the hotel to be credible.  The court then reviewed the dates on which the checks were delivered, noting that only the first was presented on a Friday in advance of a scheduled event at the Kirkley, the checks were not deposited for payment until

12

several days later, and they were still not honored for lack of sufficient funds. Based on this evidence, the court convicted McGinnis of all three counts of violating Code § 18.2-181.

McGinnis was sentenced to nine years' imprisonment with six years and six months suspended. As discussed above, on the twentieth day after the sentencing order was entered, McGinnis filed a *pro se* motion to set aside his convictions. In denying McGinnis's motion, the circuit court did not state its rationale for doing so.

### D. *Analysis of the Merits of the Third Assignment of Error*

The issue presented in McGinnis' third assignment of error, and the contentions of the parties thereon, is straightforward. In sum, we are asked to resolve whether the language relied upon by McGinnis, which the General Assembly added to Code § 18.2-181 by amendment in 1978, was intended to limit the application of this statute to those cases in which a worthless check is issued "in payment as a present consideration for goods or services."

In any case involving statutory construction we begin with the language of the statute. *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 705 (2012). In considering the construction to be given the language of Code § 18.2-181, we are cognizant that "penal statutes must be strictly construed according to the rule of lenity and, if the language of the statute permits two reasonable but contradictory constructions, the statutory construction favorable to the accused should be applied." *Blake v. Commonwealth*, 288 Va. 375, 386 (2014) (internal quotation marks and citation omitted). However, this rule does not permit a defendant to benefit from an unreasonably restrictive interpretation of the statute. *Id.*

Code § 18.2-181, as in effect on the date of McGinnis' offenses[5] in relevant part read:

---

[5] In 2018, Code § 18.2-181 was amended, along with other larceny statutes, to increase the threshold amount for elevating a petit larceny to a grand larceny from $200 to $500.

Any person who, with intent to defraud, shall . . . deliver any check . . . upon any bank knowing, at the time of such . . . delivering, that [he] has not sufficient funds in, or credit with, such bank . . . for the payment of such check . . . although no express representation is made in reference thereto, shall be guilty of larceny; and, if this check . . . has a represented value of $200 or more, such person shall be guilty of a Class 6 felony.

The word "credit" as used herein, shall be construed to mean any arrangement or understanding with the bank, trust company, or other depository for the payment of such check, draft or order.

Any person . . . delivering any such check . . . in payment as a present consideration for goods or services for the purposes set out in this section shall be guilty as provided herein.

We have previously held that Code § 18.2-181 creates, rather than codifies, the crime of larceny by worthless check, as no such crime existed at common law. *Payne v. Commonwealth*, 222 Va. 485, 487 (1981). This is so because larceny by worthless check "involves no forceful taking contrary to the will of one with a superior right to possess." 1 John L. Costello & Craig S. Lerner, Virginia Criminal Law & Procedure § 14.2 (4th ed. 2018). The absence of a common law offense resulted in the crime of passing a worthless check to be prosecuted under different theories of fraud when it was first recognized; however, as the offense became increasingly common many jurisdictions, including Virginia, found it to be more expedient to enact a statute defining the crime as either a species of fraud or larceny. *See* Rollin M. Perkins & Ronald N. Boyce, Criminal Law 386 (3d ed. 1982). In Virginia, the General Assembly enacted the original version of Code § 18.2-181 in 1920, making the violation of that statute a species of larceny. *Cook v. Commonwealth*, 178 Va. 251, 256-57 (1941).

Prior to the 1978 amendment of Code § 18.2-181, this Court held that labor and other services were not subject to prosecution under a common law theory of larceny "because neither time nor services may be taken and carried away," which was a necessary element of larceny at common law. *Lund v. Commonwealth*, 217 Va. 688, 692 (1977). Thus, for a larceny statute to

14

be applicable to the theft of a service, it was necessary that its language demonstrate "a clearly expressed legislative intent" to that effect. *Id.*

Given the fact that Code § 18.2-181 was amended to include its application to "present consideration for goods and services" immediately after the decision in *Lund*, it has been observed that "*Lund* is the explanation for the 1978 amendment, and that amendment expanded the reach of the statute rather than limiting it." *See*, *e.g.*, Costello & Craig, *supra*, § 14.2; Comment, Survey of Developments in Virginia Law, 1977-78, 64 Va. L. Rev. 1407, 1413-14 & n.68 (1978). Moreover, shortly after the statute was amended to include the final paragraph, the Attorney General issued an opinion regarding the effect of the amendment on a prosecution for larceny by worthless check where the debt was for neither a good nor service, but as payment of rent for leased real estate. 1979-1980 Op. Att'y Gen. 43. The Attorney General opined that "the first paragraph of [Code § 18.2-181] is sufficient authority for a larceny prosecution of the person who issued a bad check." *Id.* This was so because, in the view of the Attorney General, "[t]he 1978 amendment . . . addresses itself to a narrowly drawn factual situation. It does not negate language contained in the first paragraph of the section which allows the prosecution of any person who issues a bad check with the intent to defraud." *Id.*

The construction of a statute given by the Attorney General, while not binding on the courts, is entitled to due consideration. *Board of Supervisors v. Marshall*, 215 Va. 756, 762 (1975); *see also Commonwealth v. Williams*, 295 Va. 90, 98 (2018). As the Attorney General's opinion is addressed directly to the issue raised in this appeal, we will give consideration to the assertion therein that the 1978 amendment "does not negate language contained in the first paragraph." That is, we must determine whether the addition of the final paragraph of Code § 18.1-181 was intended to expand the reach of the statute to *include* the use of a worthless

15

check in payment as a present consideration for goods or services, rather than to limit its application *only* to such payments.

In *Payne*, prior to the amendment of Code § 18.2-181 at issue here, we considered whether a conviction for passing a worthless check could be sustained where the defendant claimed a preexisting proprietary interest in the property for which the check was intended as payment. The Court concluded that while one cannot be guilty of common law larceny of property in which one had an undivided interest, Code § 18.2-181 was a statutory offense of larceny that was defined by the language of the statute which related to the act of passing the worthless check, not possession of the object of the transaction, and "the offense is complete when, with the requisite intent, a person utters a check he knows to be worthless." 222 Va. at 488 (internal quotation marks omitted).

We have not previously construed Code § 18.2-181 since the 1978 amendment addressing the question whether the Commonwealth is not limited to those instances in which a worthless check is passed as a present consideration for goods and services. For the reasons that follow, we now hold that the 1978 amendment was not intended to limit the application of the statute in this way.

As we have already noted, Code § 18.2-181 is not a codification of the common law offense of larceny, but rather the creation of a new offense of larceny. And, as we made clear in *Payne*, the gravamen of the offense under Code § 18.2-181 is the passing of a worthless check with the intent to defraud. Thus, regardless of the object of the payment, the burden on the Commonwealth is to establish that the defendant knew or had reason to know that the check was worthless because there were insufficient funds in his bank account at the time the check was passed and that in passing the check he intended to defraud the receiver. Code §§ 18.2-183

16

to -185 provide certain procedural mechanisms for presuming knowledge and intent, but they are not the exclusive manner for proving a violation of Code § 18.2-181.

We hold that as defined by Code § 18.2-181, larceny by worthless check is not limited to checks passed as present consideration for goods and services. Prior to the addition of this language, the statute applied to the passing of worthless checks with an intent to defraud the receiver, and by the addition of the final paragraph in the 1978 amendment the General Assembly did no more than address the application of *Lund* by making clear that one could be guilty of passing a worthless check as payment for services as well as goods.

Accordingly, when reviewing a conviction under Code § 18.2-181 for sufficiency of the evidence, the inquiry of the reviewing court is whether the evidence and reasonable inferences therefrom, viewed in a light favorable to the Commonwealth, establishes the two elements of the statutory offense. Here, we conclude that the circuit court, as trier of fact, had sufficient evidence from which it could conclude that on all three occasions in which McGinnis presented a worthless check to the Kirkley for payment on his accounts he did so with the knowledge that there were not sufficient funds to cover the checks and that he did so with the intent to defraud the Kirkley.

McGinnis conceded that he knew that he did not have sufficient funds in his bank accounts when he delivered the checks to the Kirkley. Moreover, he further conceded that he needed the Kirkley to continue to extend him credit for future events being planned by Quest Media in order for him to have sufficient funds in his bank accounts to pay the Kirkley. It is a reasonable inference from this evidence that McGinnis, cognizant that his business was in financial difficulty, passed the checks to the Kirkley with the fraudulent intent to have the hotel continue to extend him credit. In this respect, it is of particular significance that the circuit court

17

expressly found that there was no credible evidence of the alleged agreement between McGinnis and the Kirkley's owner to permit him to make payments on his account with the understanding that the checks would not be available for deposit until he received funds from future events.

In refusing McGinnis' motion to vacate his convictions, the circuit court implicitly found that Code § 18.2-181 was not limited to checks made as payment for present consideration of goods or services, but applied to the passing of any worthless check with an intent to defraud. Accordingly, as the court's determination is consistent with our construction of the statute and having found that the court's determination of McGinnis' guilt is not plainly wrong or without support in the evidence, we will affirm McGinnis' convictions on three counts of violating Code § 18.2-181.

## E. Conclusion

For the reasons stated above, we will reverse the judgment of the Court of Appeals, vacate the December 12, 2017 opinion of the Court of Appeals, and reinstate the judgment of the circuit court.

*Reversed,*
*vacated, and*
*final judgment.*